Charles F. HOLMANS, II, Appellant,

v.

TRANSOURCE POLYMERS, INC., a
New York Corporation, Appellee.

No. 2–95–035–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 21, 1995.

Rehearing Overruled Feb. 1, 1996.

Charles F. Holmans, II, Dallas, for appellant.

Calhoun & Stacy, and V. Paige Pace, Thomas C. Jones, Ty Collin Simmons, Dallas, for appellee.

Before DAY, LIVINGSTON and HOLMAN, JJ.

## OPINION

DAY, Justice.

This is an appeal from a dismissal order. The trial court dismissed appellant's common-law claim for unpaid wages for lack of subject-matter jurisdiction. Because we hold that the Payday Law [1] did not preempt the court's jurisdiction to hear appellant's common-law claim for unpaid wages, we reverse and remand.

## THE FACTS

On December 30, 1993, appellant filed a common-law debt action against Transource for alleged unpaid sales commissions and expenses totalling $31,055.71. Appellant subsequently filed a wage claim under the Payday Law provisions of the Labor Code with the Texas Employment Commission (TEC) seeking a determination regarding the same commissions and expenses allegedly owed to him by Transource. The TEC issued a Preliminary Wage Determination Order and determined that Transource owed appellant $25,-705.91 for unpaid commissions. Transource filed an appeal of the Preliminary Wage Determination Order and requested a special hearing on the matter. On May 4, 1994, Transource withdrew its appeal and request for a special hearing and tendered a check in the amount of the TEC determination. On May 13, 1994, the TEC granted Transource's request to withdraw its appeal. On May 15, 1994, appellant notified the TEC that he wished to withdraw his administrative claim in order to pursue his suit in district court and requested the TEC to issue an order stating his claim had been withdrawn. The TEC responded, acknowledging receipt of appellant's request to withdraw his claim and that the TEC now considered the wage claim closed.

On August 17, 1994, Transource moved the district court to dismiss appellant's suit, arguing the court was without subject-matter jurisdiction because appellant failed to exhaust his administrative remedies provided by the Payday Law. After a hearing, the trial court granted the motion and dismissed the case.

In two points of error, appellant asserts the trial court erred: (1) in dismissing his common-law suit on the basis the court lacked subject-matter jurisdiction; and (2) to construe the Payday Law as providing for a mandatory and exclusive remedy would be an unconstitutional interpretation. For the reasons enunciated below, we agree with appellant's assertions.

## DISCUSSION

The controlling issue in this case is whether the trial court correctly interpreted the Payday Law; that is, whether the Texas Legislature intended for the administrative procedure provided by the Payday Law to be the mandatory and exclusive remedy for wage claimants, effectively repealing the common law. Because the actual language of the statute does not exhibit an express intent

1. Tex.Labor Code Ann. §§ 61.001 et seq. (Vernon Pamph.1996). Subtitle C, Chapter 61 of the Labor Code will be referred to as the "Payday Law." The Payday Law establishes an administrative system vesting authority in the Texas Employment Commission to govern the payment of wages by employers. The statute also provides for administrative review of claims for wages and provides for judicial review of administrative decisions.

to this effect, any such intent by the legislature must be inferred; therefore, this court must ascertain the intent of the legislature. Tex.Gov't Code Ann. § 312.005 (Vernon 1988) (Code Construction Act); *Stauffer v. Henderson,* 801 S.W.2d 858, 869 (Tex.1990) (Ray, J., dissenting).

## Standard of Review

 Statutory construction is a question of law. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989). The cardinal rule of statutory construction is to ascertain the legislature's intent and to give effect to that intent. *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994). When determining legislative intent, the court may look to the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternate constructions. *Id.* Additionally, it is to be presumed that the legislature intended to have a construction that makes the statute constitutional. Tex.Gov't Code Ann. § 311.021 (Vernon 1988); *Dreyer v. Greene,* 871 S.W.2d 697, 700 (Tex.1993) (Gammage, J., dissenting). Therefore, when the statute lends itself to two interpretations, one which is reasonable and within the constitution and one which would render the statute unconstitutional, we must adopt the interpretation which protects the statute's constitutionality.

## Common Law versus Statutory Remedies

Appellant's suit for unpaid wages in the district court was a common-law action for debt. Transource argues that the remedial scheme established by the Payday Law abolished and replaced the common-law remedy regarding claims for unpaid wages. Relying on the Texas Supreme Court's reasoning in *Mingus v. Wadley,* 115 Tex. 551, 558, 285 S.W. 1084, 1087 (1926), Transource maintains that a suit for unpaid wages is a purely statutory action because the Payday Law, although not providing a remedy unknown to the common law, provides a reasonable substitute for the common-law rights abolished by the statute. If the assertion were true,

then Transource would be correct in arguing that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable. *Id.* However, we hold that a cause of action for unpaid wages is not purely statutory because, as explained further below, the remedial scheme provided by the Payday Law does not provide a reasonable substitute for the constitutional right to a jury trial, which is guaranteed for actions recognized at common law prior to the adoption of the Texas Constitution. Therefore, appellant's cause of action is not purely statutory.

Transource cites the Supreme Court's decision in *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483 (Tex.1991), as a case analogous to the present dispute. In *Schroeder,* the court construed the provisions of the Texas Commission on Human Rights Act.[2] There, the claimant attempted to bring a civil action in district court without having filed an administrative claim as provided in the statute. *Id.* at 484. The Supreme Court held that, despite the absence of a specific statement, pursuit of the administrative procedures was a prerequisite to bringing a civil action, and the intent of the legislature to provide for a mandatory exhaustion requirement was apparent from the statute as a whole. *Id.* at 487. Appellant argues that *Schroeder* is distinguishable from the present case because the claim in that case was based entirely on a remedy created by the statute and not found at common law. We agree. The claimant's cause of action in *Schroeder* was based on a remedy that did not exist at common law and was created by the statute; therefore, the statutory provisions were mandatory and exclusive or the action would not be maintainable because of lack of jurisdiction. *Id.* at 488 (quoting *Green v. Aluminum Co. of Am.,* 760 S.W.2d 378, 380 (Tex. App.—Austin 1988, no writ)). In the present case, the remedy was not created by the statute but was well-recognized at common law.

2. Act effective Sept. 23, 1983, 68th Leg., 1st C.S., ch. 7, 1983 Tex.Gen.Laws 37, *amended by* Act of Sept. 1, 1989, 71st Leg., R.S., ch. 1186, 1989 Tex.Gen.Laws 4824 (current codification at Chapter 21 Tex.Labor Code Ann. (Vernon Pamph. 1996)).

Under Texas law, in a situation where common law and a statute both provide remedies, the statutory remedy is cumulative of the common-law remedy unless the statute expressly or impliedly negatives or denies the right to the common-law remedy. *Navistar Int'l Transp. Corp. v. Crim Truck & Tractor Co.*, 791 S.W.2d 241, 245 (Tex.App.—Texarkana 1990), *aff'd*, 823 S.W.2d 591 (Tex. 1992); *Byler v. Garcia*, 685 S.W.2d 116, 119 (Tex.App.—Austin 1985, writ ref'd n.r.e.). Here, the Payday Law does not expressly provide that the statutory scheme is exclusive; therefore, if the statute is meant to be exclusive, it would be by implication only.

Abrogation by implication of a cause of action and remedy recognized at common law is disfavored and requires a clear repugnance between the common law and statutory causes of action. *Coppedge v. Colonial Sav. & Loan Ass'n*, 721 S.W.2d 933, 938 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Transource asserts that a statute in derogation of the common law is not to be construed strictly. It is recognized, however, that if a statute deprives a person of a common-law right, the statute will, nevertheless, be strictly construed and will not be extended beyond its plain meaning or applied to cases not clearly within its purview. *Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex.1993). It is clearly evident from the language of the statute that the objective of the Payday Law is to deter employers from withholding wages by providing wage claimants an avenue for the enforcement of wage claims, many which would often be too small to justify the expense of a civil lawsuit. Although the statute established a statutory scheme providing for the recovery of unpaid wages, the legislature neither expressly declared nor necessarily implied an intention to abrogate the common-law remedy of an action for debt. We conclude that the statutory action for unpaid wages under the Payday Law did not repeal the common-law action, but instead provided a choice of remedies for the wage claimant. The intent of the legislature to create a choice is further evidenced by an analysis of the constitutionality of the statute.

## Constitutional versus Unconstitutional Interpretations

As mentioned above, if the statute provides a reasonable substitute for the common-law rights it abolishes, then the provisions of the statute will be mandatory and exclusive, and the action will be considered to be purely statutory. Thus, the inquiry becomes whether the remedy provided by the Payday Law reasonably substitutes the common-law action it would abolish if the administrative remedy were construed to be exclusive. This question rests on the wage claimant's right to a jury trial on his common-law claim.

It is well-established that the Texas Constitution provides that the right to a trial by jury shall remain inviolate in all actions where that right existed at the time the constitution was adopted. TEX. CONST. art. I, § 15; *State v. Credit Bureau of Laredo, Inc.*, 530 S.W.2d 288, 291 (Tex.1975). The right to a trial by jury is protected and inviolate in those cases where a jury would have been proper at common law. *Credit Bureau*, 530 S.W.2d at 291. Clearly, at common law, actions for debt were triable before a jury. *Id.* at 292; *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 450 (Tex.1993). Access to a jury need not be provided at the initial adjudication, so long as the right to appeal and the jury trial on appeal are secured. *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 526 (Tex.1995). If a trial to a jury was available to the appellant on his wage claim at the time of the adoption of our constitution, and the legislature denies the right to trial by jury in the administrative scheme it establishes and does not provide for an appeal where a jury trial can be obtained, then the provision is violative of the Texas Constitution. *See Swinford v. Logue*, 313 S.W.2d 547, 549 (Tex.Civ.App.—Waco 1958, orig. proceeding [leave denied]). Thus, Transource's assertion that the Payday Law's scheme provides a reasonable substitute for the common-law remedy, and is therefore exclusive, can be correct only if a claimant's right to a jury trial is preserved.

The administrative scheme provided by the Payday Law precludes a jury trial at any stage of the process, including the judi-

cial review provisions. *See* TEX.LABOR CODE ANN. § 61.051 *et seq.* (Vernon Pamph.1996). Specifically, the statute's appeal provision provides that the appeal will be by trial de novo with the *substantial evidence rule* being the standard of review. TEX.LABOR CODE ANN. § 61.062(e) (Vernon Pamph.1996). What is substantial evidence is a matter of law. *Simpson v. City of Houston,* 260 S.W.2d 94, 97 (Tex.Civ.App.—Galveston 1953, writ ref'd n.r.e.); *see also Levelland Indep. Sch. Dist. v. Contreras,* 865 S.W.2d 474, 478 (Tex.App.—Amarillo 1993, writ denied). In explaining the substantial evidence standard of review, the El Paso court noted:

> In a trial under the substantial evidence rule the issue is whether the evidence introduced before the trial court shows facts in existence as of the time the [commission's] order was entered, of such a substantial nature as to reasonably support the order. This issue is one of law and trial of the fact issues by a judge or jury is avoided.

*Burton v. Texas Employment Comm'n,* 743 S.W.2d 690, 692 (Tex.App.—El Paso 1987, writ denied) (quoting *Cruz v. City of San Antonio,* 424 S.W.2d 45, 47 (Tex.Civ.App.—San Antonio 1968, no writ)). Any interpretation of the Payday Law requiring a wage claimant to utilize the statutory administrative procedures as a mandatory and exclusive remedy would preclude the claimant from ever obtaining a trial by jury to determine the fact issues, which is a right guaranteed to the claimant under the constitution because a jury trial was available on his common-law claim at the time of the constitution's adoption. Such a construction of the statute would make it violative of the constitution, and would be against the presumption that the legislature intended the statute to be construed as constitutional.

Citing *Lebohm v. City of Galveston,* 154 Tex. 192, 275 S.W.2d 951 (1955) (op. on reh'g), Transource argues there is precedent for the legislature preempting common-law rights and substituting a mandatory statutory scheme. In *Lebohm,* the Supreme Court held that the Workers' Compensation Act did not arbitrarily abolish any common-law ac-

tion an employee may have against his employer but instead simply substituted a different but certain and adequate legal remedy for the one that existed at common law. *Id.* at 954. Indeed, the Workers' Compensation Act [3] is an example of the legislature's reasonable substitute for common-law rights; and the Act also well demonstrates how an administrative scheme can protect the common-law right to trial by jury and not violate the constitution.

The judicial review sections of the Workers' Compensation Act provide for a substantial evidence standard for all issues *other than* issues regarding compensability or income or death benefits. TEX.LABOR CODE ANN. § 410.255 (Vernon Pamph.1996). Issues of compensability or income or death benefits will have a preponderance of the evidence burden of proof and the availability of a jury trial. *See* TEX.LABOR CODE ANN. §§ 410.301–.304 (Vernon Pamph.1996). Clearly, the Workers' Compensation Act preserves a trial by jury for those actions recognized at common law before the adoption of the constitution; yet, for those remedies created only by the statute, the substantial evidence review is maintained. Recently, the Supreme Court made this very distinction in *Texas Workers' Compensation Comm'n v. Garcia,* and in a thorough analysis, the court held the Workers' Compensation Act did not violate the constitutional right to trial by jury. 893 S.W.2d at 526–31.

Unlike the Workers' Compensation Act, the Payday Law does not preserve a jury trial to a wage claimant at any stage of the proceedings. Therefore, we can only conclude the legislature intended the Payday Law to be cumulative of the common law and stand as an alternative remedy a wage claimant may seek. Should a claimant choose to file a claim under the statute, utilize its remedial scheme, and appeal the final administrative order, then the claimant is properly required to abide by the statute's provisions. We do not, however, construe the Payday Law as preempting a claimant, such as appellant, from choosing to pursue his claim as a common-law action in the courts of this state. A claimant will ultimately have to choose

---

3. Currently Title 5, Subtitle A TEX.LABOR CODE ANN. (Vernon Pamph.1996).

which remedy to accept; however, in the present case, appellant withdrew his claim from the TEC before becoming final and, therefore, chose instead to pursue the remedies available to him at common law.

## CONCLUSION

We find that the remedy provided by the Payday Law was intended by the legislature to be constitutional, and in order to be so, must preserve the right to a jury trial for an action brought on a debt for unpaid wages. Accordingly, to preserve this right, the Payday Law must be construed as a statutory remedy that co-exists with the common-law remedy of a suit in court. Such construction is not repugnant to the object sought by the statute; that is, providing a streamlined process by which a wage claimant may bring a claim without the expense and inconvenience of a lawsuit, as well as deterring employers from withholding wages. Neither remedy must necessarily exclude the other, both are alternative remedies from which the claimant may choose depending upon the size of his claim or other considerations.

We hold that jurisdiction in the trial court was proper for appellant's claim, and the trial court erred in dismissing the cause of action for lack of subject-matter jurisdiction. Appellant's points of error one and two are sustained. The judgment of the trial court is reversed and the cause remanded for trial.