Christopher BLOCH, Appellant,

v.

DOWELL SCHLUMBERGER
INCORPORATED,
Appellee.

No. 01–95–01548–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 6, 1996.

Gregg M. Rosenberg and Ian Scharfman, Houston, for Appellant.

David E. Black and Daniel E. Rogers, Houston, for Appellee.

Before SCHNEIDER, C.J., and ANDELL and TAFT, JJ.

## OPINION

TAFT, Justice.

Appellant, Christopher Bloch, brought a common-law breach-of-contract action for recovery of severance pay benefits allegedly owed him under Dowell Schlumberger Incorporated's (Dowell) written severance plan. The trial court rendered a take-nothing summary judgment in favor of Dowell. The sole issue on appeal is whether a wage claimant must exhaust all administrative remedies through the Texas Workforce Commission before filing a civil lawsuit. We reverse and remand.

### Facts

The dispositive facts of this case are uncontroverted. In 1970, Bloch was employed by the Dowell Industrial Services Division of Dow Chemical. In 1976, he was transferred to Dowell and then transferred back to Dowell Industrial Services in 1979. Dowell merged with, or acquired, Dowell Industrial Services in 1979. Bloch resigned in 1984.

In 1985, Bloch was employed by Naylor Industrial Services until this division was sold to Dowell in 1992. Bloch continued to work for Dowell until his termination on March 31, 1994. At the time of his termination, Dowell offered Bloch $10,471.23 in severance pay based on his two years of service with Naylor immediately prior to its acquisition by Dowell. This figure also included Bloch's period of employment with Dowell after the Naylor acquisition up to the date of his termination.

Bloch's claim is based upon a dispute as to the amount of severance pay owed him. Bloch claims he was assured the severance pay would be based not only on the two years of service with Naylor, but would also include his tenure with Dowell before his 1984 resignation. When Dowell refused to credit Bloch for his previous tenure with the company, he filed suit alleging a common-law action to recover debt.

The trial court agreed with Dowell's argument that severance benefits are governed by chapter 61 of the Labor Code (the "Payday Act"). TEX. LAB. CODE ANN. §§ 61.001–.095 (Vernon 1996). Dowell contends that the Payday Act provides that an administrative wage claim is a mandatory prerequisite to filing suit. Because it is uncontroverted that Bloch did not file a claim with the former Texas Employment Commission (TEC) pursuant to the Payday Act before filing a civil suit, the trial court decided

Dowell was entitled to judgment as a matter of law.[1]

## Standard of Review

■ The movant on a motion for summary judgment has the burden of establishing, as a matter of law, there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). When the summary judgment proof fails to establish that the movant is entitled to judgment as a matter of law, summary judgment is improper, and the trial court's judgment must be reversed. *See id.*

## Exhaustion of Administrative Remedies Required?

In his sole point of error, Bloch contends the trial court erred as a matter of law in ruling that the filing of a claim with the TEC is a mandatory prerequisite to filing a civil action. Bloch relies heavily on a recent opinion by our sister court, *Holmans v. Transource Polymers, Inc.*, 914 S.W.2d 189 (Tex. App.—Fort Worth 1995, writ filed), for this contention.

Dowell responds with two reply points. First, *Holmans* is an unpublished opinion and, as such, is not to be used as authority. *See* TEX.R.APP. P. 90(i). Second, the Texas Supreme Court's opinion in *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 487 (Tex.1991), is dispositive in this case because the court construed section 6.01(a) of the Commission on Civil Rights Act,[2] former TEX.REV.CIV. STAT. ANN. art. 5221k (now codified at section 21.201(a) of the Labor Code), to hold that the exhaustion of administrative remedies is a mandatory prerequisite to filing a civil action. We disagree as to both points.

## A. Unpublished Opinion

Dowell takes the position that rule 90(i)[3] prohibits the citation of unpublished opinions, including those designated for publication, but not yet published. At oral argument, Dowell requested that this Court sanction Bloch for violating rule 90(i) by disregarding *Holmans.*

■ We disagree with Dowell's interpretation of "unpublished opinion" for purposes of rule 90(i). The prohibition against citation to "unpublished" opinions only prohibits citation to opinions not designated for publication. Rule 90(i) obviously does not prohibit citation to opinions designated for publication until they are actually published, because this would impermissibly delegate to private publishers, *e.g.*, Lawyers Co-operative Publishing Company, Mead Data Central, Opinion Service, Texas Supreme Court Journal, West Publishing Company, et cetera, the power to decide what the common law of Texas is.[4] *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655 (Tex.1989) (action by private

---

1. Effective September 1, 1995, the TEC was renamed the Texas Workforce Commission. Act of May 26, 1995, 74th Leg., R.S., ch. 655, § 11.75, 1995 Tex. Gen. Laws 3543, 3621.

2. Commission on Human Rights Act, 68th Leg., 1st C.S., ch. 7, § 6.01(a), 1985 Tex. Gen. Laws 37, 50 (former TEX.REV.CIV. STAT. ANN. art. 5221k. § 6.01(a), *since repealed and reenacted as* TEX. LAB. CODE ANN. § 21.201(a)).

3. TEX.R.APP. P. 90(i) provides:

   Unpublished Opinions. Unpublished opinions shall not be cited as authority by counsel or by a court.

4. We note that Texas has not published official appellate court reports since 1962. Governor John Connally line-item vetoed the 1963 appropriation for the publication of *Texas Reports* and *Texas Criminal Reports:*

   The Appellate Court Reports are a duplication of a service already provided by other court reports which offer a quicker and more usable reference for use of State Agencies. Even if this service were necessary, the funds appropriated for the printing and distributing of the reports are inadequate to accomplish the full purpose.

   Veto Message of Gov. Connally to Act of May 24, 1963, 58th Leg., R.S., ch. 525, 1963 Tex. Gen. Laws 1671, 1671.

   Although the legislature in 1989 repealed the statute authorizing the publication of *Texas Criminal Reports*, interestingly enough the statute authorizing the publication of *Texas Reports* remains "on the books." Act of May 29, 1989, 71st Leg., R.S., ch. 646, § 22(1), 1989 Tex. Gen. Laws 2134, 2140 (repealing former TEX. GOV'T CODE ANN. § 22.104 that authorized *Texas Criminal Reports* ); TEX. GOV'T CODE ANN. § 22.008 (Vernon 1988) (*Texas Reports* ).

publisher in assigning unofficial article number to statute cannot have force of law). In addition, if rule 90(i) were interpreted to require actual publication, we would have to decide what "publication" means, *i.e.,* slip opinions versus typeset advance sheets and bound books versus online computer services versus compact disks. Although it may be that a recent opinion from the Texas Supreme Court typeset and printed in the *Texas Supreme Court Journal* "looks" more persuasive than a recent opinion from the Court of Criminal Appeals reprinted in Opinion Service's *Slip Opinions of the Court of Criminal Appeals of Texas,* both opinions are equally persuasive in 'the eyes of the law. Accordingly, we hold that *Holmans* is a published opinion which we may consider.

### B. *Holmans*

█ It is no small wonder Dowell has sought tenaciously to preclude the use of *Holmans.* It is directly on point, accurately distinguishes *Schroeder,* and astutely reasons why, under facts similar to this case, the exhaustion of administrative remedies through the TEC is not a mandatory prerequisite to filing a civil action.

The common-law action for recovery of debt existed prior to the enactment of the Texas Constitution, and the Texas Constitution provides the right to trial by jury in all common-law actions where that right existed prior to its enactment. TEX. CONST. art. I, § 15; *Holmans,* 914 S.W.2d at 192–93. Thus, the court in *Holmans* reasoned that because the Payday Act is neither cumulative of the common-law remedy, nor does it expressly or impliedly negate or deny the common-law remedy, it would be unconstitutional if it were a mandatory remedy. *Holmans,* 914 S.W.2d at 192–93. Furthermore, when a statute lends itself to two interpretations, one which is reasonable and within the Constitution, and one which would render the statute unconstitutional, the court must adopt the interpretation which protects the statute's constitutionality. TEX. GOV'T CODE ANN. § 311.021 (Vernon 1988); *Holmans,* 914 S.W.2d at 191.

Furthermore, *Schroeder* is distinguishable because, as *Holmans* states, the claimant's cause of action in *Schroeder* was based on a remedy that did not exist at common-law and was created purely by statute. Thus, in *Schroeder,* the statutory provisions were mandatory and exclusive and had to be followed or the action would not have been maintainable for lack of jurisdiction. *Schroeder,* 813 S.W.2d 483, 488; *see also Holmans,* 914 S.W.2d at 191.

We follow the reasoning of *Holmans* and hold Bloch did not have to exhaust administrative remedies before filing suit for severance pay. We sustain Bloch's sole point of error.

We reverse the trial court's judgment and remand the cause for further proceedings.