Janola **BENNETT**, Appellant,

v.

**CASH AMERICA INTERNATIONAL, INC.**, Appellee.

No. 01–98–00433–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 3, 1998.

Mark A. McLean, Houston, for Appellant.

Barbara Ann Quigg, Richard D. Daly, Houston, for Appellee.

Before Justices COHEN, HEDGES, and TAFT.

## OPINION

ADELE HEDGES, Justice.

Janola Bennett appeals the trial court's dismissal of her suit for lack of subject matter jurisdiction. We reverse and remand.

## STATEMENT OF FACTS

The dispositive facts in this case are undisputed. In June of 1996, Janola Bennett pledged her former husband's Masonic ring as security for a $300 loan from Cash America International, Inc. On July 31, 1996, having repaid the loan in full, she demanded return of the ring. Claiming it had been stolen, Cash America did not return the ring. Cash America offered Bennett the opportunity to locate a like-kind replacement ring at any Cash America location in Houston or a cash settlement of $2500. Bennett refused both offers, contending that the ring was worth $5600. Bennett sued Cash America, alleging conversion, negligence, and gross negligence. The trial court granted Cash America's plea to the jurisdiction and dismissed the case.

## SUBJECT MATTER JURISDICTION

In her sole issue, Bennett argues that the trial court erred in dismissing the case for lack of subject matter jurisdiction.

She contends that the dismissal violated the provisions of the Texas Constitution guaranteeing open courts and right to a trial by jury. She further contends that presentment of her claim to the consumer credit commission is not her exclusive and mandatory remedy.

The controlling issue in this appeal is whether the trial court properly interpreted the Texas Pawnshop Act. Specifically, we address whether the administrative review provided by the Act is the sole and exclusive remedy for an individual with a complaint against a pawnshop for "lost" pledged property. Because the language of the statute does not explicitly state whether the adminis-

trative remedy is exclusive and mandatory, we must ascertain the intent of the legislature. TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998).

## Standard of Review

██ Statutory construction is a question of law. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989). In construing a statute, we must attempt to give effect to the legislature's intent. *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex.1994). To determine the legislature's intent, we look to the language of the statute, its legislative history and purposes, and the consequences of alternate constructions. *Id.* We presume that the legislature intended the statute to be construed in a manner that renders it constitutional. TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 1998).

## The Texas Pawnshop Act

The Texas Pawnshop Act provides: "A pawnbroker shall replace pledged goods that are lost or damaged while in the pawnbroker's possession with like kind merchandise. The replacement is subject to approval by the commissioner."[1] TEX. FIN.CODE ANN. § 371.167(a) (Vernon 1998).[2] The Act further provides that if the customer is dissatisfied with the final decision of the commissioner, that party may file suit against the commissioner and is entitled to judicial review. *Id.* § 14.301.[3]

Bennett contends that the Act provides a choice of remedies: (1) a like-kind replacement subject to administrative review as provided under the Act, or (2) a common-law cause of action for conversion and negligence. In contrast, Cash America contends that a person with a complaint against a pawnshop for "lost" pledged property must first exhaust his or her administrative remedy under the Act by presenting the complaint to the consumer credit commissioner.

██ The Texas Pawnshop Act does not expressly require a person to exhaust his or

---

1. "Commissioner" means the consumer credit commissioner. TEX. FIN.CODE ANN. § 371.003(2) (Vernon 1998) (formerly, TEX.REV.CIV.STAT.ANN. art.5069–51.02(f) (Vernon 1987)).

2. Formerly, TEX.REV.CIV. STAT. ANN. art. 5069–51.16(e) (Vernon 1987).

3. Formerly, TEX.REV.CIV. STAT. ANN. art. 5069–2.04(2) (Vernon 1987).

her administrative remedy by complaining to the consumer credit commission before bringing suit. Thus, if the statute is meant to be the exclusive and mandatory remedy, it is by implication only.

In *Holmans v. Transource Polymers, Inc.,* 914 S.W.2d 189 (Tex.App.—Fort Worth 1995, writ denied), the court dealt with the issue of statutory construction in an administrative remedy case involving the Texas Payday Law.[4] In *Holmans,* an employee brought suit against his former employer for unpaid sales commissions and expenses. *Id.* at 190. The employee also filed a wage claim with the Texas Employment Commission (TEC). The TEC issued an order stating an amount due the employee. The employer appealed the order, but it later withdrew the appeal and attempted to tender the amount determined by the TEC. Subsequently, the employee withdrew his administrative claim, choosing instead to judicially pursue his suit on the debt. The trial court ultimately dismissed his case for lack of subject matter jurisdiction, on the grounds that the employee had failed to exhaust his administrative remedy under the Payday Law. *Id.*

On appeal, the Fort Worth Court of Appeals reversed the dismissal and held that the Payday Law was not the employee's sole and exclusive remedy for a claim based on past wages. *Id.* at 194. The court's holding emphasized that the language of the Payday Law did not expressly provide that the statutory scheme was exclusive. Therefore, "if the [Payday Law] is meant to be exclusive, it would be by implication only." *Id.* at 192. The court recognized that a claim for past wages is an action on a debt, an established common law cause of action, and that any statute abrogating such an action for debt should be strictly construed and not "extended beyond its plain meaning or applied to cases not clearly within its purview." *Id.*

This Court adopted the reasoning of *Holmans* and held that a wage claimant need not exhaust its administrative remedies before filing suit for unpaid wages. *Bloch v. Dowell Schlumberger Inc.,* 925 S.W.2d 301, 304 (Tex. App.—Houston [1st Dist.] 1996, no writ).

We find the reasoning of *Holmans* persuasive in the present case as well.

In the present case, we are likewise presented with a statute that does not expressly state that it is an exclusive and mandatory remedy. The Pawnshop Act does not expressly require that an aggrieved party must first present a claim to the consumer credit commission before filing suit. As in *Holmans,* if the Act is intended to be an exclusive and mandatory remedy, it is by implication only. Moreover, the construction that Cash America proposes would derogate Bennett's causes of action for conversion and negligence. Therefore, we must strictly construe the statute and not extend it beyond its plain meaning.

In *Holmans,* the court found that "the objective of the Payday Law is to deter employers from withholding wages by providing wage claimants an avenue for enforcement of wage claims, many of which would often be too small to justify the expense of a civil lawsuit." 914 S.W.2d at 192. The court held that the intent of the Payday Law was to provide a wage claimant a choice of remedies. *Id.*

The Pawnshop Act advances a similar objective. Many pawn transactions involve small amounts for which it would not be economically feasible to incur the expense of a civil suit. Where the dollar amount is minimal, the Act provides a system of recourse for an individual whose pledged property is lost or damaged. However, when the pledger believes the administrative remedy is not adequate, redress in the courts should be available.

The Pawnshop Act's express purposes do not support a finding that the intent of the legislature was to require pledgers of pawned property to lodge their complaints to an administrative agency before filing suit. The statute provides that the purposes of the Act are to:

(1) prevent fraud, unfair practices, discrimination, imposition, and abuse of state residents;

(2) exercise the state's police power to ensure a sound system of making pawn loans

---

4. TEX. LABOR CODE ANN. § 61.001 (Vernon 1996).

and transfers of personal property by and through pawnshops;

(3) prevent transactions in stolen property and other unlawful property transactions by licensing and regulating pawnbrokers and pawnshop employees;

(4) provide for licensing and investigation fees;

(5) provide minimum capital requirements for pawnbrokers;

(6) ensure financial responsibility to the state and its residents and compliance with federal, state, and local law, including rules and ordinances; and

(7) assist local governments in the exercise of their police power.

TEX. FIN.CODE ANN. § 371.002 (Vernon 1998).[5] We do not see how any of the purposes of the Act are thwarted by our refusal to find that the legislature intended the Act to require a claimant to exhaust administrative remedies before filing suit.

Cash America argues that *American Pawn and Jewelry Inc. v. Kayal*, 923 S.W.2d 670 (Tex.App.—Corpus Christi 1996, writ denied), supports its contention that a claimant must exhaust administrative remedies before bringing a suit. In *American Pawn*, the court reversed and dismissed the case for lack of jurisdiction based on the lack of evidence that the commissioner approved or rejected a like-kind replacement. *Id.* at 674. The court held that, without such a ruling, the plaintiffs had failed to exhaust their administrative remedies. *Id.* Therefore, the case was not ripe for judicial review. *Id.* at 674–75.

However, in *American Pawn* the plaintiffs chose to pursue their administrative remedies. In contrast, Bennett never sought her administrative remedy. She never submitted her claim or made any complaints to the consumer credit commission. Bennett instead chose to pursue her common law remedy. Moreover, to the extent that the *American Pawn* facts are not distinguishable, we reject its holding.

---

5. Formerly, TEX.REV.CIV. STAT. ANN. art. 5069–51.01A (Vernon 1987).

6. Our interpretation protects the statute's constitutionality. Therefore, we need not address ap-

We recognize that the legislature has enacted statutes that require an aggrieved party to exhaust administrative remedies before filing suit. For example, the Texas Workers' Compensation Act requires exhaustion of administrative remedies. The statute explicitly states that the administrative scheme provides the *exclusive* remedy for an employee covered by workers' compensation insurance. TEX. LABOR CODE ANN. § 408.001 (Vernon 1996) (emphasis added). Under this statute, the legislature has expressly provided that administrative review is the exclusive remedy. If the legislature intends that administrative review be an exclusive and mandatory remedy, the legislature should make its intent clear through express, certain language.

 We find that the administrative review provided under section 371.167 of the Pawnshop Act is merely an alternative remedy for a person with a complaint concerning lost pledged property. We believe that the legislature intended to provide individuals with such complaints a choice of remedies.[6]

We sustain appellant's issue.

We reverse the trial court's judgment of dismissal. The cause is remanded.

pellant's contentions that the Act violates the provisions of the Texas Constitution guaranteeing open courts and a right to a trial by jury.