Saleh W. IGAL, Appellant,

v.

BRIGHTSTAR INFORMATION TECHNOLOGY GROUP, INC. and BRBA, Inc., Appellees.

No. 11–03–00099–CV.

Court of Appeals of Texas, Eastland.

June 30, 2004.

Rehearing Overruled Sept. 2, 2004.

Charles Sartain, Lawrence James, Looper, Reed & McGraw, Dallas, for appellant.

Nelita Neves Hatch, Anne Marie Finch, Tania M. Hepfner, Jackson Walker, L.L.P., Houston, for appellees.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

### Opinion

W.G. ARNOT, III, Chief Justice.

This is an appeal of a summary judgment order dismissing an employee's common-law debt claim for unpaid wages. Saleh W. Igal sued Brightstar Information Technology Group, Inc. and BRBA, Inc. alleging that they owed him for unpaid wages due under a written employment contract. Prior to filing the underlying action, Igal presented an administrative "Payday Law" claim to the Texas Workforce Commission (the Commission) regarding the same wages which are at issue

in this appeal. *See* TEX. LAB. CODE ANN. § 61.001 et seq. (Vernon 1996 & Supp.2004). After conducting several hearings, the Commission issued a final decision denying Igal's wage claim. *See* Sections 61.060 & 61.061. Igal did not pursue an appeal of the Commission's final decision as permitted by Section 61.062. Instead, he instituted this action to pursue common-law breach of contract remedies against appellees.

Appellees moved for summary judgment on two grounds in defense of Igal's claims. Appellees first asserted that Igal's claims were barred by the Commission's prior decision under the holding in *Holmans v. Transource Polymers, Inc.*, 914 S.W.2d 189 (Tex.App.-Fort Worth 1995, writ den'd). They also asserted that Igal had failed to exhaust his administrative remedies. The trial court granted appellees' motion for summary judgment on the basis that "[Igal's] claims [were] barred by a prior decision of the Texas Workforce Commission." Igal attacks the trial court's entry of summary judgment in a single issue. We affirm.

The movant for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex.1985). When deciding whether there is a disputed material fact issue precluding summary judgment, the appellate court must take as true all evidence favorable to the nonmovant. *Nixon v. Mr. Property Management Company, Inc.*, *supra* at 548–49. The reviewing court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Nixon v. Mr. Property Management Company, Inc.*, *supra* at 549.

Igal filed his administrative claim with the Commission on July 17, 2001. *See* Section 61.051. He asserted in the claim that appellees terminated him without cause on January 19, 2000.[1] He sought the amount of $285,234.57 for unpaid wages which he alleged were due from May 15, 2000, through January 31, 2001.[2] The Commission issued a "preliminary wage determination order" on September 19, 2001, which dismissed Igal's administrative claim.[3] *See* Section 61.052. On October 5, 2001, Igal filed a request for a hearing to contest the preliminary wage determination order. *See* Section 61.054. Hearings were conducted on Igal's claim on November 27, 2001, December 27, 2001, and February 14, 2002. The commission issued its "PAYDAY LAW DECISION" on February 19, 2002.

The Commission determined that Igal's administrative wage claim was not timely filed.[4] Section 61.051(c) provides that "[a] wage claim must be filed not later than the 180th day after the date the wages claimed became due for payment." The Commission ruled that any wages owed to Igal would have been due more than 180 days prior to the date that he filed his claim. In reaching this determination, the Commission made a finding that Igal was not

---

1. BRBA, Inc. was Igal's original employer. Brightstar Information Technology Group, Inc. subsequently acquired 100 percent of BRBA, Inc.'s stock. The Commission determined that BRBA, Inc. and Brightstar Information Technology Group, Inc. were co-employers of Igal.

2. Appellees continued to pay Igal from January 2000 through April 2000.

3. The record neither contains a copy of the preliminary wage determination order nor indicates the basis upon which the Commission denied Igal's claim at the preliminary stage.

4. Each of the three hearing notices issued by the Commission advised the parties that "timeliness is an issue in this case."

terminated by appellees without cause. Instead, the Commission found that appellees chose not to renew Igal's employment agreement.

■■■ The objective of the Texas Payday Act is to deter employers from withholding wages by providing wage claimants an avenue for the enforcement of wage claims, many of which would be too small to justify the expense of a civil lawsuit. *Wal–Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 561 (Tex.App.-Houston [14th Dist.] 2002, no pet'n) (citing *Holmans v. Transource Polymers, Inc., supra* at 192). The Payday Act is not an employee's sole and exclusive remedy for a claim based on past wages but is rather an alternative remedy that is cumulative of the common law. *See 11th Street Bingo Association v. Simonson*, No. 13–02–399–CV, 2004 WL 1117161, at *3 (Tex.App.-Corpus Christi, May 20, 2004, no pet'n h.); *Holmans v. Transource Polymers, Inc.*, supra at 192–93.

The claimant in *Holmans* filed a common-law debt action against his employer to collect sales commissions and expenses which he alleged were unpaid. *Holmans v. Transource Polymers, Inc., supra* at 190. The claimant subsequently filed an administrative wage claim with the Commission. *Holmans v. Transource Polymers, Inc., supra* at 190. The preliminary wage determination order issued by the Commission determined that the employer owed the claimant over $25,000 in unpaid commissions. *Holmans v. Transource Polymers, Inc., supra* at 190. Prior to the Commission's issuance of a final determination, the claimant withdrew his administrative law claim in order to pursue a common-law debt action. *Holmans v. Transource Polymers, Inc., supra* at 190. The employer sought and obtained the dismissal of the claimant's common-law debt action based upon the claimant's failure to exhaust his administrative remedies under the Payday Law. *Holmans v. Transource Polymers, Inc., supra* at 190.

The employer in *Holmans* argued on appeal that the administrative procedure provided by the Payday Law was the exclusive remedy for the claimant to pursue his wage claim. *Holmans v. Transource Polymers, Inc., supra* at 190. The court rejected this argument by holding that the administrative remedy is an alternative remedy to a common-law debt action. *Holmans v. Transource Polymers, Inc., supra* at 192–93. The court stated as follows in making its determination:

> [W]e can only conclude the legislature intended the Payday Law to be cumulative of the common law and stand as an alternative remedy a wage claimant may seek. *Should a claimant choose to file a claim under the statute, utilize its remedial scheme, and appeal the final administrative order, then the claimant is properly required to abide by the statute's provisions.* We do not, however, construe the Payday Law as preempting a claimant, such as appellant, from choosing to pursue his claim as a common-law action in the courts of this state. A claimant will ultimately have to choose which remedy to accept; however, in the present case, [the claimant] withdrew his claim from [the Commission] before becoming final and, therefore, chose instead to pursue the remedies available to him at common law. (Emphasis added)

*Holmans v. Transource Polymers, Inc., supra* at 193–94.

■■ Unlike the claimant in *Holmans*, Igal did not withdraw his administrative wage claim prior to the Commission's issuance of its final determination. Appellees cite *Holmans* for the proposition that Igal cannot pursue a common-law debt action after obtaining a final determination of his administrative claim from the Commission.

Igal responds to this contention by asserting that the Commission did not have jurisdiction in light of its determination that he did not timely file his claim. He further contends that the Commission's decision was void since the Commission did not have jurisdiction over his claim. *See Blount v. Metropolitan Life Insurance Company,* 677 S.W.2d 565, 574 (Tex.App.-Austin 1984), *rev'd on other grounds,* 709 S.W.2d 646 (Tex.1986).

The Thirteenth Court of Appeals recently addressed a similar set of facts in *Simonson.* The claimant in *Simonson* initially filed an administrative wage claim with the Commission. *11th Street Bingo Association v. Simonson, supra* at *1. The Commission issued a preliminary wage determination order finding that the claimant was not entitled to the wages which she claimed were unpaid because she was a volunteer rather than an employee. *11th Street Bingo Association v. Simonson, supra* at *1. The claimant contested the preliminary wage determination by requesting a hearing. *11th Street Bingo Association v. Simonson, supra* at *1. Upon considering the claimant's contest, the Commission determined that the claimant did not timely file her claim for wages. *11th Street Bingo Association v. Simonson, supra* at *1. In its decision, the Commission concluded that it did not "have jurisdiction over the wages in question and the wage claim will be dismissed" and affirmed the preliminary wage determination order denying the claimant's claim. *11th Street Bingo Association v. Simonson, supra* at *1.

The claimant in *Simonson* subsequently filed a common-law debt action in district court. *11th Street Bingo Association v. Simonson, supra* at *2. Relying upon *Holmans,* the court of appeals determined that the trial court did not have subject matter jurisdiction to consider the claimant's claim because the claimant failed to exhaust her administrative remedies with respect to the administrative wage claim. *11th Street Bingo Association v. Simonson, supra* at *2. The court stated as follows:

[B]y initiating and proceeding with her administrative remedies under the statute, [the claimant] chose to forego her common-law causes of action and elected the alternative remedy provided by statute[.] ... A party may not initially elect one remedy and then choose the other remedy when dissatisfied with the first result. Had [the claimant] wanted to pursue her common-law remedies, she was required to withdraw her claim with [the Commission] before the [C]ommission's decision became final.

[The claimant] argues that an unsuccessful attempt at obtaining relief through [the Commission] is equivalent to not pursuing an administrative remedy. We disagree. If [the claimant's] argument prevailed, then a party would be able to pursue both an administrative remedy and a common law remedy as long as one pursuit was unsuccessful. However, the law allows a choice between the two remedies but prohibits pursuing both actions. (Citations omitted)

*11th Street Bingo Association v. Simonson, supra* at *3.

Justice Castillo filed a dissenting opinion in *Simonson. 11th Street Bingo Association v. Simonson, supra* at *3–4. She concluded that the election of remedies doctrine did not apply because the claimant did not obtain a recovery from the Commission. *11th Street Bingo Association v. Simonson, supra* at *3–4. Justice Castillo based her conclusion on the Commission's statement that it did not have jurisdiction to consider the claimant's untimely filed claim. *11th Street Bingo Association v. Simonson, supra* at *4.

■ We agree with the majority's reasoning in *Simonson.* A claimant in Igal's position should not be permitted to obtain a final determination from the Commission and then be permitted to pursue a common-law claim because the administrative claim was unsuccessful. The doctrine of res judicata prevents parties and their privies from relitigating a claim with a final adjudication from a competent tribunal. *Ingersoll–Rand Company v. Valero Energy Corporation,* 997 S.W.2d 203, 206–07 (Tex.1999). The rationale supporting the doctrine is to prevent splitting claims, thus curbing vexatious litigation and promoting judicial economy. *Ingersoll–Rand Company v. Valero Energy Corporation, supra* at 206–07.

■ In order for the doctrine of res judicata to be applicable, the first tribunal must be one of competent jurisdiction. *Ingersoll–Rand Company v. Valero Energy Corporation, supra* at 206–07. We disagree with Igal's contention that the Commission did not have subject-matter jurisdiction to consider his administrative wage claim. We acknowledge that the Commission expressly stated in its final determination that it did not have jurisdiction to consider Igal's claim because it was not timely filed. Irrespective of the Commission's "no jurisdiction" statement, the untimeliness of an administrative wage claim is not a component of the Commission's subject-matter jurisdiction. The Labor Code vests the Commission with jurisdiction to consider claims of Texas employees for unpaid wages. The parameters of the Commission's subject-matter jurisdiction over wage claims is outlined in 40 TEX. ADMIN. CODE § 821.3 (1998) (Texas Workforce Commission, Jurisdiction):

Section 821.3. Jurisdiction

(a) The Commission shall exercise jurisdiction over wage claims in which:

(1) the work is performed exclusively in Texas;

(2) the work is performed in part in Texas and in part in other states within the United States and where the wages would be reportable to Texas for Unemployment Insurance purposes pursuant to Texas Labor Code § 201.043; or

(3) the work is performed by an individual who is a Texas resident at the time the work is performed and the work is performed outside Texas for a Texas employer or a non-resident employer over whom Texas exercises jurisdiction pursuant to subsection (b) of this section.

(b) The Commission shall exercise jurisdiction over a non-resident employer pursuant to the Texas Civil Practice & Remedies Code, Chapter 17, Subchapter C, also known as the "Texas Long–Arm Statute," when all three of the following are met:

(1) the employer purposely does some act or consummates some transaction in Texas;

(2) the wage claim arises from the employer's act or the employer's contact with Texas is continuing and systematic; and

(3) exercising jurisdiction is consistent with:

(A) fair play and justice as determined by the quality, nature and extent of the employer's activities in Texas including the extent to which the employer avails itself of the benefits and protections of Texas law; and

(B) the relative convenience of the parties.

(c) The Commission shall not exercise jurisdiction over wage claims to the extent the wages are for work performed outside the United States.

In spite of its "no jurisdiction" statement, the Commission issued a final deci-

sion on the merits with respect to Igal's claim. *Harrison v. Gemdrill International, Inc.*, 981 S.W.2d 714, 716–17 (Tex.App.-Houston [1st Dist.] 1998, pet'n den'd), involved a situation wherein the Commission actually did not have subject matter jurisdiction because the wages which were sought in the claim were earned in a foreign country. *See* Section 821.3(c). The Commission in *Harrison* dismissed the claim for want of jurisdiction and voided its previous decision when it determined that it lacked subject matter jurisdiction to consider the claim. The Commission did not do either of these acts with respect to Igal's claim. Igal's sole issue on appeal is overruled.

The judgment of the trial court is affirmed.