LAKE COUNTRY ESTATES,
INC., Appellant,

v.

Jerry TOMAN, Loretta Hammon, Petrea
Holt, and Mary Hjort, Appellees.

No. 18478.

Court of Appeals of Texas,
Fort Worth.

Oct. 22, 1981.

Rehearing Denied Dec. 10, 1981.

**678**

Fanning, Harper, Wilson, Martinson & Fanning, Don Martinson, Dallas, for appellant.

Burdock & Jicha, William P. Jicha, Saginaw, for appellees.

Before MASSEY, C. J., and SPURLOCK and HOLMAN, JJ.

## OPINION

SPURLOCK, Justice.

This appeal is from an order sustaining defendants' plea in abatement. The trial court found that primary jurisdiction of this cause is with the Texas Water Commission and dismissed the case.

We affirm the trial court's disposition of defendants' plea in abatement in regard to the causes of action arising out of alleged violations of the Texas Water Code. However, we sever and reverse as to those causes of action in slander and tortious interference with contract and remand those causes to the trial court for further proceedings.

Lake Country Estates, Inc. (plaintiff) instituted suit against Jerry Toman, Loretta Hammon, Petrea Holt, and Mary Hjort (defendants individually) in a Tarrant County district court alleging that the defendants in their individual capacities and as directors acting outside their scope of authority conspired to engage and did engage in specified illegal and ultra vires acts including slander, tortious interference with contract and activities in violation of the Texas Water Code, their purpose being to drive Lake Country Estates out of business. Plaintiff seeks compensatory damages from each defendant individually. Defendants, all present or prior members of the Board of Directors of Tarrant County Municipal Utility District No. 1 (hereinafter referred to as district), filed a plea in abatement contending that the district court was without jurisdiction to consider plaintiff's suit until plaintiff's allegations were considered by the Texas Department of Water Resources (hereinafter referred to as department). At the hearing of the plea in abatement, defendants offered no evidence in support of their plea. The trial court sustained their plea in abatement and dismissed the case.

Plaintiff, a Texas corporation, is a developer of raw land for sale to residential home builders. In the 1970's, plaintiff began development of a subdivision called Lake Country Estates on Eagle Mountain Lake near Fort Worth in Tarrant County, Texas. Originally, Lake Utilities Company, Inc. provided water and sewer service to the subdivision, but in 1975, by order of the Texas Water Rights Commission *, pursuant to Tex.Const. art. XVI sec. 59 and Tex.

* The Texas Water Rights Commission was merged with the Texas Water Development Board and the Texas Water Quality Board to form the Texas Department of Water Resources in 1977.

Water Code Ann. ch. 54 (1972), the Tarrant County Municipal Utility District No. 1 was created to provide for the long-term needs of the subdivision for water and sewer service. The district's creation was confirmed at an election held within the district on March 3, 1975, at which time the voters also approved the sale of bonds for the purpose of developing water and sewer services within the district.

A group of residents opposed to the inclusion of their property within the district and to the sale of bonds to purchase the existing water and sewer facilities owned by Lake Utilities Company, Inc. organized the "Concerned Citizens Committee" which actively, though unsuccessfully, opposed the bond sale and the district expansion. The defendants, members of the "Committee", successfully ran for the Board of Directors of the district. It is the actions of the defendants, after taking office, that is the subject of this suit.

In its petition, plaintiff alleged that the defendants, after being duly elected to the Board of Directors, conspired and willfully (1) withheld approval of expansion of the district's service to plaintiff's undeveloped land; (2) delayed and otherwise prevented establishment and approval of a written developer policy; and (3) failed to call an annexation election.

Plaintiff further alleged that during defendants' tenure in office they (1) violated the Texas Open Meetings Act, Tex.Rev.Civ. Stat.Ann. art. 6252–17 (1970); (2) slandered plaintiff; (3) removed or approved the removal of records from the district offices to private residences; (4) used their official positions to aid and abet the "Committee" in prosecuting a lawsuit against plaintiff; (5) interfered with the contractual relationship between plaintiff and Fort Worth National Bank; (6) changed the district's developer policy from a thirty percent developer participation to a one hundred percent developer participation policy; and (7) illegally filed a lien against plaintiff's lots for failure to pay "standing charges", although such charges were paid to date.

Plaintiff prayed for general and special damages for loss of a contract to sell 144 acres to a residential builder due to the defendant directors' implementation of the district's one hundred percent developer participation policy, interest expenses incurred as a result of the defendant directors' conspiracy to prevent the plaintiff's development of its land for sale to builders, and special damages for injury to the project's financial reputation.

Defendants contend the trial court properly sustained their plea in abatement because the department is the proper forum for the matters plaintiff complains of before the trial court pursuant to Tex. Water Code Ann. sec. 12.081 (1980) which vests the department with "the continuing right of supervision" over the district and its directors.

Plaintiff advances one point of error contending that the trial court erred in granting defendants' plea in abatement because such plea was supported by no evidence.

■ It is settled law that a plea in abatement is sustainable without proof only when the truth of the matters alleged in defendants' plea in abatement appear on the face of plaintiff's pleadings. The burden rests upon the one presenting a plea in abatement, although verified, to support his plea by evidence. One who merely presents his plea in abatement without supporting it by evidence, waives the plea unless he can demonstrate that the plaintiff's petition itself established the ground urged. *Brazos E. P. Coop., Inc. v. Weatherford Ind. Sch. Dist.*, 453 S.W.2d 185 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.); 1 Tex.Jur.2d *Abatement and Revival* sec. 94 (1959).

■ Where no evidence is presented at the hearing of the plea in abatement, plaintiff's petition must be presumed to state the facts pled correctly and it must be construed in the light most favorable to plaintiff. *Brazos E. P. Coop., Inc. v. Weatherford Ind. Sch. Dist., supra.*

We have before us the very narrow question of whether, under the allegations in plaintiff's petition, the trial court erred in sustaining defendants' plea in abatement.

■ The defendants rely upon the doctrine of primary jurisdiction. In their brief, the defendants contend that the Texas Water Code is properly before the court because Texas courts will take judicial notice of public laws and the purposes for which public laws are enacted. See 23 Tex. Jur.2d *Evidence* sec. 11 (1961). We agree that the Texas Water Code clearly falls within this rule of judicial notice so that no additional evidence was required to bring it to the court's attention, having been cited in both the plaintiff's petition and defendants' plea in abatement.

Tex. Water Code Ann. sec. 12.081 (1980) provides in part:

"(a) The powers and duties of all districts and authorities created under Article III, Sec. 52, and Article XVI, Sec. 59, of the Texas Constitution are subject to the continuing right of supervision of the State of Texas by and through the department or its successor, and this supervision may include but is not limited to the authority to:

(1) inquire into the competence, fitness, and reputation of the officers and directors of any district;

(2) require, on its own motion or on complaint by any person, audits or other financial information, inspections, evaluations, and engineering reports;

(3) issue subpoenas for witnesses to carry out its authority under this subsection;

(4) institute investigations and hearings using examiners appointed by the commission; and

(5) issue rules necessary to supervise the districts."

Tex. Water Code Ann. sec. 54.024 (1972) provides:

"The rights, powers, privileges, authority, and functions conferred on a district (municipal utility district) by the granting of a petition for creation shall be subject to the continuing right of a supervision of the state to be exercised by and through the commission (department)."

■ The doctrine of primary jurisdiction is applicable where there arises a question of jurisdiction as between a court and an administrative agency. As described in *D&S Investments, Inc. v. Mouer*, 521 S.W.2d 118 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.):

"Primary jurisdiction is the principle which determines whether the court or the agency should make the initial decision. (Citations omitted.) The doctrine of primary jurisdiction is sometimes confused with, but is distinguishable from, the concepts of exhaustion of administrative remedies and ripeness. Exhaustion and ripeness determine at what stage a party may secure a review of administrative action. See Davis, "Administrative Law Doctrines," 28 Texas L.Rev. 376, 400 (1950). The purpose of the precept of primary jurisdiction is to assure that the administrative agency will not be bypassed in a matter which has been especially committed to it by the legislature." (Citations omitted.)

■ Under this "rule", the courts will not determine a controversy (1) involving a question that is within the jurisdiction of an administrative tribunal prior to the decision by the administrative tribunal, (2) where the question demands the exercise of sound administrative discretion requiring the special knowledge, experience and services of the administrative tribunal to determine technical and intricate matters of fact, and (3) a uniformity of ruling is essential to comply with the purposes of the regulatory statute administered. *Kavanaugh v. Underwriters Life Ins. Co.*, 231 S.W.2d 753, 755 (Tex.Civ.App.—Waco 1950, writ ref'd); annot. 38 L.Ed.2d 796, 802–3. See also *Lloyd A. Fry Roofing Company v. State*, 516 S.W.2d 430, 432 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.).

The Texas Supreme Court in *Foree v. Crown Central Petroleum Corporation*, 431 S.W.2d 312, 316 (1968), in its discussion of the "rule", cited the following passage from Davis in Administrative Law Text, Sec. 19.-07 (Hornbook Series 1950), at 352:

"The theory seems reasonably clear that the test for applying the principle of pri-

mary jurisdiction is not whether some parts of the case are within the exclusive jurisdiction of the courts but whether some parts of the case are within the exclusive jurisdiction of the agency. Because the purpose of the doctrine is to assure that the agency will not be bypassed on what is especially committed to it, and because resort to the courts is still open after the agency has acted, the doctrine applies even if the agency has no jurisdiction to grant the relief sought. Thus, the doctrine was applied in *Thompson v. Texas, Mexican Railway* [328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946)], even though the suit was for damages and even though the ICC could not award damages. When an agency cannot grant the relief sought, the court may stay the judicial proceeding pending the administrative determination; this is what was done in the Tex-Mex case."

The Texas Supreme Court has recognized several exceptions to the primary jurisdiction rule. (1) "Where the issue is one inherently judicial in nature (as we think the question of trespass is), the courts are not ousted from jurisdiction, unless the Legislature, by a valid statute, has explicitly granted exclusive jurisdiction to the administrative body." *Foree v. Crown Central Petroleum Corporation, supra.* (2) The primary jurisdiction does not apply "when the administrative agency is powerless to grant the relief sought and has no authority to make incidental findings which are essential to the granting of the relief." *Id.* (3) Intervention by the court in administrative proceedings may be permissible when an agency is exercising authority beyond its statutorily conferred powers. *Westheimer Independent Sch. Dist. v. Brockette,* 567 S.W.2d 780 (Tex.1978).

A careful analysis of the plaintiff's petition reveals that in all instances except two the alleged wrongful acts committed by defendants relate directly to the responsibilities of the defendants as directors to make decisions regarding the expansion of the district's utility system and the financing of same, and the defendants' decisions

as directors of the district to require one hundred percent developer participation. The two alleged causes of action which do not fall within the primary jurisdiction of the department are plaintiff's allegations of slander and tortious interference with contract which are judicious in nature, thereby falling within the jurisdiction of the trial court. *Gregg v. Delhi-Taylor Oil Corp.,* 162 Tex. 26, 344 S.W.2d 411 (1961).

In the instant case, even though the department is powerless to grant the relief sought, in this case damages, it does have the authority to make incidental findings which are essential to the granting of the relief.

The district is a political subdivision of the State of Texas governed by Chapter 54 of the Water Code. Under this code, the district has "the functions, powers, authority, rights and duties which will permit accomplishment of the purposes for which it was created" pursuant to Tex. Water Code Ann., sec. 54.201 (1972), and is "subject to the continuing right of supervision of the State of Texas (to be exercised) by and through the department ..." Sec. 12.081, *supra.*

As to all plaintiff's allegations, except those of slander and tortious interference with contract, the acts complained of are acts committed by defendants while acting in their official capacity as directors of the district. Clearly, such complaints should first be brought before the department which has continuing supervisory authority over the district pursuant to the Tex. Water Code.

Plaintiff should not be allowed to bypass the administrative agency by alleging that the actions of which it is complaining are outside the scope of the duties and authority of the defendants as directors of the district where it is clear from the pleadings that the actions complained of relate directly to the responsibilities of the directors to make decisions regarding the expansion of the district, issuance of bonds, calling of annexations elections, maintenance of district records, calling of meetings, and implementation of a district developer policy.

Clearly, these issues demand "the exercise of sound administrative discretion requiring the special knowledge, experience and services of the (department) to determine technical and intricate matters of fact." *Kavanaugh v. Underwriters Life Insurance Co., supra.* The intricate matters of fact involved include the economic feasibility of the district financing seventy percent of plaintiff's desired utility extensions, projections of growth in the ad valorem tax base within the district, the cost of constructing and operating the utility system requested by plaintiff, and whether the defendants were unreasonable or arbitrary in refusing the utility system extensions requested by plaintiff based on available water and sewer capacity.

In addition, a uniformity of ruling on the issues raised by the plaintiff is essential to comply with the purposes of the regulatory authority of the department to investigate the competence and fitness of the officers and directors of any district and its supervision of water district financing. If the defendant directors' decisions relating to the internal management and financing of the district are reviewed by the trial court before the department has the opportunity to address the issues, then the purposes of Tex. Water Code Ann. sec. 12.081, *supra,* will be thwarted.

As to plaintiff's allegations of slander and tortious interference with contract, we are of the opinion that the trial court would have jurisdiction of these causes of action. Therefore, we find that the trial court erred in not severing these phases of plaintiff's case and in ordering the entire case dismissed.

We affirm the trial court's judgment insofar as it orders plaintiff's suit dismissed as to all other alleged causes of action, except slander and tortious interference with contract, and we sever and reverse and remand to the trial court for further proceedings as to Lake Country Estates' causes of action for slander and tortious interference with contract.