**12**

JACKSON COUNTY VACUUM TRUCK
SERVICE, INC., Appellant,

v.

LAVACA–NAVIDAD RIVER
AUTHORITY, Appellee.

No. 13–85–237–CV.

Court of Appeals of Texas,
Corpus Christi.

Oct. 17, 1985.

Rehearing Denied Nov. 7, 1985.

Marshall Boykin, III, Benny M. Cason, Wood, Boykin, Wolter & Keys, Corpus Christi, for appellant.

Douglas G. Caroom, Jimmy Alan Hall, Bickerstaff, Heath & Smiley, Austin, for appellee.

Jim Mattox, Atty. Gen., Scott Lehecka, Asst. Atty. Gen., Austin, for intervenor-appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

This is a statutory construction case involving the Texas Water Code.

The Lavaca-Navidad River Authority (LNRA), a local governmental agency in Jackson County, attempted to enter land owned by Jackson County Vacuum Truck Service, Inc., to inspect for water pollution. When the LNRA was denied access by the employees of the Vacuum Service Company, it brought suit, seeking a declaratory judgment to the effect that it has the right to enter and inspect Vacuum Service Company's land. The Texas Department of Water Resources (DWR) intervened and sided with the LNRA. The trial court held that these two entities do have the authority under the Water Code[1] to enter the Vacuum Service Company's land. Vacuum Service Company appeals.

Appellant, the Vacuum Service Company, operated an injection well in Jackson County which disposed of salt water produced during oil and gas drilling operations. Appellant contends that *only* the Railroad Commission (RRC) has the authority to enter private land used for oil and gas operations to inspect for water pollution. Appellee, the LNRA, on the other hand, argues that it has *concurrent* inspection authority with the RRC. We agree with the appellee and affirm the judgment of the trial court.

■ Section 26.014 of the Water Code sets out the inspection authority of the Department of Water Resources:

The members of the commission and employees and agents of the department are entitled to enter any public or private property at any reasonable time for the purpose of inspecting and investigating conditions relating to the quality of water in the state or the compliance with any rule, regulation, permit or other order of the department. (Department refers to the DWR).

The inspection authority of local governments is identical to that of the Department of Water Resources, as provided by Section 26.173(a):

A local government has the same power as the department has under Section 26.-014 of this code to enter public and private property within its territorial jurisdiction to make inspections and investigations of conditions relating to water quality. The local government in exercising this power is subject to the same provisions and restrictions as the department.

These provisions make clear that both the DWR and local governments have the general authority to enter and inspect private land for possible water pollution. Vacuum Service Company points out, however, that a specific section of the Water Code delegates "sole responsibility" to the RRC to deal with water pollution on oil and gas land. Vacuum Service Company argues that this specific section controls over the general grant of authority to the DWR and local governments so that the RRC has exclusive authority to enter Vacuum Service Company's land. Vacuum Service Company's entire argument centers upon Section 26.131 of the Water Code, which provides:

The Railroad Commission of Texas is *solely responsible* for the control and disposition of waste and the abatement and prevention of pollution of surface and subsurface water resulting from activities associated with the exploration, development, and production of oil or gas ... (emphasis added).

It is the task of this Court to examine the interrelationship of these sections of the Water Code and to resolve the competing interpretations urged by the parties. There are three basic paths the Court could take in so doing. Vacuum Service Company, the appellant, would have the Court give Section 26.131 a strict, literal meaning and ignore the rest of the Water Code. It would hold that *only* the Railroad Commis-

---

1. TEX.WATER CODE ANN. 26.001–.307 (Vernon Supp.1985).

sion could enter Vacuum Service Company's property to inspect for pollution. The Department of Water Resources and the Lavaca-Navidad River Authority want the Court to determine that the River Authority not only has the right to inspect Vacuum Service Company's land, but *also* has the right to enforce any water pollution violations found existing on the land.

A third view is that presented by the Railroad Commission in its amicus curiae brief. Under its interpretation of the above sections of the Water Code, the RRC agrees with the LNRA that the DWR and local governments have authority to inspect land for violations of State pollution laws and DWR regulations even if those lands involve oil and gas operations. It differs with the LNRA with respect to the enforcement powers of the LNRA and the DWR, however. Once the DWR and local governments know or discover that water pollution is the result of the production of oil, gas, or other geothermal resources, the RRC contends that the jurisdiction of these entities ends and they must defer at that point to the RRC.

■ When construing statutes, courts must ascertain the legislative intent by looking to the *whole* act and will seek to harmonize any apparently contradictory provisions. *Barr v. Bernhard,* 562 S.W.2d 844, 849 (Tex.1978); *Sanchez v. Brandt,* 567 S.W.2d 254, 258 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). In light of the legislative history of Section 26.131 and the purposes behind the Water Code, we find that the Railroad Commission's position is sound. The "solely responsible" language of Section 26.131 was added by the Legislature to resolve a jurisdictional dispute between the Railroad Commission and the Water Pollution Control Board (forerunner to the DWR) concerning the regulation of water pollution by the oil and gas industry.[2] The Legislature clearly did not want several State agencies regulating

the oil and gas industry's use of water. Instead, all matters involving oil and gas regulations were placed in the hands of one agency, the Railroad Commission, to prevent the confusion and chaos which might follow multi-agency regulation.[3]

The Legislature, in its wisdom, on the other hand, recognized that water is an extremely valuable commodity in this State. The main thrust of the Texas Water Code is to prevent water pollution. The Legislature realized that the best way to accomplish this purpose was to allow local governments to help State agencies in this regard. Landowners should not be allowed to defeat that purpose by attempting to keep local government inspectors off their land by claiming they are involved in the oil and gas industry and that only the Railroad Commission can inspect and investigate water conditions.

To harmonize these two goals, the Legislature created a system empowering the Railroad Commission with the sole authority to *regulate* water pollution by the oil and gas industry, but other State and local agencies were empowered to make *inspections* of all lands, public and private, as well as oil and gas lands, to determine whether water pollution was due to other than oil and gas activity on the premises. Sections 26.014 and 26.173(a) refer to "entry," "inspection," and "investigation." Section 26.131 refers, instead, to "control and disposition of waste" and "abatement and prevention of pollution." Nowhere within Section 26.131 is the right of entry for *inspection* and *investigation* purposes of the DWR or local governments restricted.

■ We hold that local governments and the Department of Water Resources have the authority to enter and inspect public and private lands, even those known to be used for oil and gas activities. It is within their jurisdiction to investigate for possible water pollution from other than oil and gas

**2.** For a detailed background and discussion of this controversy, *see* Current Problems, *Water Pollution Control In Texas,* 48 TEX.L.REV. 1029, 1091–94 (1970).

**3.** TEX.NAT.RES.CODE ANN. § 91.101 (Vernon Supp.1985).

sources. For example, a landowner apparently engaged in the disposal of salt water from oil and gas operations could also be occasionally disposing of hazardous wastes unrelated to those operations. It is contended that the only practical way to reliably determine if an injection well is being used to dispose of oil and gas waste is to inspect, sample, and test the materials being disposed. We agree.

In Vacuum Service Company's third and final point of error, Vacuum Service Company contests the authority of the LNRA to bring this suit. Although our reasoning relies on a somewhat confusing mesh of three sections of the Code, Vacuum Service Company's last point is overruled.

Section 26.173 of the Water Code gives local governments the right to enter property to make inspections and investigations on land of conditions relating to water quality. Section 26.124 authorizes local governments to bring suit where any violation of Section 26.121 of the Code exists. Section 26.121(c) provides that "(n)o person may cause ... the performance of *any activity* in violation of this chapter ... (emphasis added)." Since Section 26.173 was violated by Vacuum Service Company by refusing the Lavaca-Navidad River Authority the right to enter and inspect, the LNRA contends that this is an automatic violation of Section 26.121(c); hence, it is authorized to bring suit under Section 26.-124. In essence, the LNRA urges the Court to read these provisions just as if the Legislature had simply said that local governments can sue for any violation of the Water Code, instead of using Section 26.124 as a conduit to achieve the same result.

The language used by the Legislature in the above three sections should be given its literal and ordinary meaning. There is no ambiguity. It would be absurd for the Legislature to give local governments the right to enter and inspect land but no means to enforce that right. The judgment of the trial court is affirmed.