**AMERICAN PAWN AND JEWELRY, INC., Appellant,**

v.

**Veronica KAYAL and Fahad Kayal, Appellees.**

No. 13–93–638–CV.

Court of Appeals of Texas, Corpus Christi.

March 5, 1996.

Rehearing Overruled June 6, 1996.

Larry Warner, Brownsville, Ronald C. Smith, Jackson, MI, for appellant.

Timoteo Gomez, Brownsville, for appellees.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

This is a breach of contract and conversion of personalty case. Following a nonjury trial, the court rendered judgment against appellant and awarded attorneys' fees and damages to appellees. By four points of error, appellant challenges: (1) the trial court's jurisdiction, (2) the sufficiency of the evidence to support the court's award of actual damages, (3) the court's excessive award of attorneys' fees, and (4) the court's improper admission of evidence. We reverse and dismiss.

In July 1990, appellees, Veronica and Fahad Kayal, visited appellant, American Pawn & Jewelry, Inc. (American Pawn), for the purpose of securing a loan. The Kayals pawned three pieces of jewelry to secure a loan in the amount of $360.00. According to the terms of the loan agreement—the pawn ticket—upon full and final payment of the principal plus interest, the Kayals were entitled to the return of their jewelry.

Subsequent to the original loan transaction, the Kayals renewed and extended the loan agreement on three separate occasions. In July 1991, the Kayals made their final loan payment, paying American Pawn a total of $1011.60, which included the principal and accrued interest due on the loan. Having made their final payment, the Kayals asked American Pawn to return their jewelry. American Pawn, however, was unable to locate the jewelry, but assured the Kayals that, as soon as the jewelry was located, it would be returned to them. A few days later, American Pawn notified the Kayals that the jewelry was lost. Consistent with preprinted language on the Kayals' pawn ticket, American Pawn told the Kayals that it would replace their jewelry with "like kind" jewelry. The Kayals' pawn ticket reads, in pertinent part:

> In the event the items you pawned are lost or damaged while in the possession of the pawnbroker it shall be the responsibility of the pawnbroker to replace the lost or damaged goods with the like kind(s) of merchandise. All such replacements are subject to the approval or rejection of the Consumer Credit Commissioner of Texas.

The Kayals telephoned the Consumer Credit Commissioner's office to file a verbal complaint against American Pawn. The Commissioner's office informed the Kayals that American Pawn would be responsible (i) for replacing their jewelry with "like kind" jewelry and (ii) for refunding their total loan payment in the amount of $1011.60. The Commissioner's office contacted American Pawn and instructed American Pawn to pro-

vide the Kayals with "like kind" replacement jewelry and to refund the loan amount.

By August 1991, American Pawn was able to obtain what it deemed to be "like kind" replacement jewelry for the Kayals and informed the Kayals as such. The Kayals went to American Pawn to pick up their replacement jewelry and left with the jewelry in their possession. Sometime later, although it is unclear how many days elapsed, the Kayals returned the replacement jewelry, rejecting it and claiming that it was "cheap." The Kayals based their claim on a verbal appraisal by a shopping mall appraiser, who had examined the replacement jewelry. At some point in time, although the record is unclear as to when, American Pawn tendered the $1011.60 refund to the Kayals, but the Kayals rejected it.

The Kayals retained an attorney, who sent two letters to American Pawn, demanding compensation (i) for the fair market value of the lost jewelry, (ii) for the loss of use of the jewelry, and (iii) for attorneys' fees. Both the Kayals and American Pawn agree the fair market value of the lost jewelry was $6000.00.

American Pawn responded to the two demand letters by offering another set of "like kind" replacement jewelry. Without looking at the proffered replacement jewelry, the Kayals rejected this offer, stating they did not consider the offer to be a good faith effort to settle their claim. The Kayals then filed suit against American Pawn in a county court at law in Cameron County, Texas.

American Pawn answered the suit and filed a motion to dismiss the suit for lack of jurisdiction. In its motion, American Pawn asserted that the Consumer Credit Commissioner has primary jurisdiction to resolve this dispute. The trial court denied American Pawn's motion. The suit was then tried before the court where the court found in favor of the Kayals and awarded them $9003.00 in actual damages, including travel and incidental expenses, and $11,000 in attorneys' fees. American Pawn now appeals the trial court's judgment.

By its fourth point of error, American Pawn contends the Consumer Credit Com-

missioner has primary jurisdiction to resolve this dispute; thus, the trial court erred when it denied American Pawn's motion to dismiss. To support its contention, American Pawn relies on (i) the Texas Pawnshop Act, TEX. REV.CIV.STAT.ANN. art. 5069–51.01–51.17B (Vernon 1987 & Supp.1995); (ii) portions of the Consumer Credit statutes, TEX.REV.CIV. STAT.ANN. art. 5069–2.02A–2.04 (Vernon 1987 & Supp.1995); and (iii) case law.

Before addressing the merits of point four, we note the Kayals allege that American Pawn waived this point. The Kayals allege that American Pawn's motion to dismiss is, in essence, a plea in abatement and therefore should have been verified, but was not. We disagree and conclude that American Pawn's motion to dismiss is a plea to the jurisdiction.

A plea to the jurisdiction is a dilatory plea, which is employed to challenge the trial court's subject matter jurisdiction over a cause of action. *State v. Benavides,* 772 S.W.2d 271, 273 (Tex.App.—Corpus Christi 1989, writ denied). A plea to the jurisdiction seeks dismissal of a cause of action when a jurisdictional defect cannot be cured. *Speer v. Stover,* 685 S.W.2d 22, 23 (Tex.1985). Whereas, a plea in abatement seeks suspension or abatement of the proceedings until the jurisdictional defect, or whatever defect, can be cured. *Id.* For reasons discussed at length below, we conclude that American Pawn's motion to dismiss is a plea to the jurisdiction. Further, American Pawn's motion is of the type that does not need to be verified. *See* TEX.R.CIV.P. 93.

In reviewing the merits of American Pawn's motion to dismiss, we keep in mind that whether a trial court has subject matter jurisdiction is a question of law. *North Alamo Water Supply v. Texas Dep't of Health,* 839 S.W.2d 455, 457 (Tex.App.—Austin 1992, writ denied); *Qwest Microwave, Inc. v. Bedard,* 756 S.W.2d 426, 440 (Tex. App.—Dallas 1988, orig. proceeding). If a court lacks subject matter jurisdiction, it has no discretion but to dismiss the case. *Qwest Microwave, Inc.,* 756 S.W.2d at 440.

As we previously noted, American Pawn bases its motion to dismiss on authority of the Pawnshop Act, the Consumer Credit

statutes, and case law. As per the language in the Consumer Credit statutes, the Consumer Credit Commissioner is responsible for enforcing all provisions of the Texas Pawnshop Act. TEX.REV.CIV.STAT.ANN. art. 5069–2.02A(1) (Vernon Supp.1995). Further, the Commissioner is responsible for investigating all complaints concerning the Texas Pawnshop Act. *Id.* art. 5069–2.03. As per the language in the Pawnshop Act, a pawnbroker shall not:

> Fail to return pledged goods to a pledgor upon payment of the full amount due the pawnbroker on the pawn transaction. In the event such pledged goods are lost or damaged while in the possession of the pawnbroker it shall be the responsibility of the pawnbroker to replace the lost or damaged goods with like kind(s) of merchandise. *All such replacements are subject to the approval or rejection of the [Consumer Credit] Commissioner.* For the purposes of this subdivision, "lost" includes destroyed or having disappeared because of any cause, whether known or unknown, that results in the pledged goods being unavailable for return to the pledgor.

TEX.REV.CIV.STAT.ANN. art. 5069–51.16(a)(5) (Vernon Supp.1995) (our emphasis added). When an aggrieved party files a complaint with the Commissioner concerning the replacement of "lost" pledged goods, the Commissioner may conduct an investigation and hold a hearing. *Id.* art. 5069–2.03. Further, the Commissioner may impose upon any involved party, the fees, expenses, and costs incurred at or in connection with the hearing. *Id.* art. 5069–2.03(6). If an aggrieved party is dissatisfied with the Commissioner's decision on the matter, the party may then file suit against the Commissioner, but the suit must be filed in a district court in Travis County, Texas. *Id.* art. 5069–2.04(1) (Vernon 1987).

American Pawn asserts the language in these statutes explicitly emphasizes the Commissioner's role in overseeing disputes concerning the replacement of "lost" pledged goods. Although, the record before us does not state the extent to which the Kayals pursued their complaint with the Commissioner, there is evidence that the Kayals telephoned the Commissioner's office to verbalize their complaint and that the Commissioner's office informed the Kayals they were entitled to receive "like kind" replacement jewelry and the return of their loan payment. However, the record does not reflect what, if any, follow-up communications and investigations ensued. Specifically, the record does not indicate whether the Commissioner actually approved or rejected the original proffered replacement jewelry. Instead, the record reflects that the Kayals failed to pursue their complaint in the Commissioner's office. As per the language in the Pawnshop Act and on the Kayal's pawn ticket, the Commissioner is to oversee the replacement of "lost" pledged goods. For this very reason, American Pawn contends that the Commissioner has primary jurisdiction to consider this dispute.

The doctrine of primary jurisdiction is applicable where there arises a question of jurisdiction as between a court and an administrative agency. *Lake Country Estates, Inc. v. Toman,* 624 S.W.2d 677, 680 (Tex.App.— Fort Worth 1981, writ ref'd n.r.e.). Primary jurisdiction is the principle which determines whether the court or the agency should make the initial decision. *Id.* (citing *D & S Investments, Inc. v. Mouer,* 521 S.W.2d 118, 120 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.)). The purpose behind primary jurisdiction is to assure that the administrative agency will not be bypassed in a matter, which has been especially committed to it by the legislature. *Id.*

■ Under the doctrine of primary jurisdiction, courts will not determine a controversy (1) involving a question that is within the jurisdiction of an administrative tribunal prior to the decision by the tribunal; (2) where the question demands the exercise of sound administrative discretion requiring the special knowledge, experience, and services of the administrative tribunal to determine technical and intricate matters of fact; and (3) where uniformity of ruling is essential to comply with the purposes of the regulatory statute administered. *Lake Country Estates, Inc.,* 624 S.W.2d at 680; *Kavanaugh v. Underwriters Life Ins. Co.,* 231 S.W.2d 753, 755 (Tex.Civ.App.—Waco 1950, writ ref'd).

The Texas Supreme Court, in discussing the doctrine of primary jurisdiction, quoted:

> The theory seems reasonably clear that the test for applying the principle of primary jurisdiction is not whether some parts of the case are within the exclusive jurisdiction of the courts but whether some parts of the case are within the exclusive jurisdiction of the agency.

*Foree v. Crown Central Petroleum Corp.*, 431 S.W.2d 312, 316 (Tex.1968) (quoting DAVIS, ADMINISTRATIVE LAW TEXT § 19.07, at 352 (Hornbook Series 1950)). Because the purpose of the doctrine is to assure that the agency will not be bypassed on what is especially committed to it, and because resort to the courts is still open after the agency has acted, the doctrine applies even if the agency is powerless to grant the relief sought, but does have authority to make incidental findings necessary to the granting of relief in a later judicial action. *Id.* at 316. As the Texas Supreme Court further quoted, "[T]he doctrine was applied in *Thompson v. Texas, Mexican Railway* [328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946) ], even though the suit was for damages and even though the [agency] could not award damages." *Id.* at 316 (quoting DAVIS, ADMINISTRATIVE LAW TEXT § 19.07, at 352 (Hornbook Series 1950)).

Here, in determining whether the Commissioner has primary jurisdiction, we must consider whether *any part* of this suit is within the exclusive jurisdiction of the Commissioner. We find that at least one aspect of this case falls squarely within the Commissioner's exclusive jurisdiction. This suit stems from the Kayals' dissatisfaction with the original proffered replacement jewelry. As per the terms of the pawn ticket and the language in the Pawnshop Act, if American Pawn loses the Kayals' jewelry, then American Pawn is responsible for replacing the lost jewelry with "like kind" jewelry. Such replacement jewelry is, of course, subject to the Commissioner's approval or rejection.

The legislature specifically granted the Commissioner with the authority to oversee the replacement of lost pledged jewelry because the Commissioner's office is in a better position with its experience, knowledge, and available resources to determine the technical and intricate matters of whether the replacement jewelry is indeed comparable in value to the lost jewelry. To deny the Commissioner the opportunity to rule on a "replacement issue" would effectively bypass such a matter specifically committed to the Commissioner by the legislature.

The Kayals argue that their case qualifies as an exception to the primary jurisdiction rule. We acknowledge three exceptions to the primary jurisdiction rule. First, if a disputed issue is one inherently judicial in nature, the courts will not be ousted from jurisdiction, unless the legislature by a valid statute has explicitly granted exclusive jurisdiction to the administrative body. *Foree*, 431 S.W.2d at 316; *Lake Country Estates, Inc.*, 624 S.W.2d at 681. Second, primary jurisdiction does not apply when the administrative agency is powerless to grant the relief sought and has no authority to make incidental findings which are essential to the granting of the relief. *Foree*, 431 S.W.2d at 316; *Lake Country Estates, Inc.*, 624 S.W.2d at 681. And, third, courts may intervene in administrative proceedings when an agency exercises authority beyond its statutorily conferred powers. *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978); *Lake Country Estates, Inc.*, 624 S.W.2d at 681. The Kayals claim the first exception applies in their case. We disagree.

The Kayals claim that the issues of breach of contract and tortious conversion of personalty in this case are inherently judicial in nature, such that the trial court should decide them. While this may be so, the legislature has explicitly granted the Commissioner with jurisdiction to oversee matters stemming from a breached pawn agreement—in this case, the replacement of "lost" pledged goods.

Here, the record is devoid of any indication that the Commissioner either approved or rejected the original proffered replacement jewelry. Without such an administrative ruling, the Kayals have not exhausted their administrative remedies. However, once the Commissioner does make such a ruling, and

if the Kayals are aggrieved by it, then the Kayals' dispute becomes ripe for judicial review.

Having considered the applicable statutes and case law, we hold that the Consumer Credit Commissioner has primary jurisdiction to resolve this dispute. Thus, the trial court erred in denying American Pawn's motion to dismiss for lack of jurisdiction. Accordingly, we sustain point four.

Because our ruling on point four is dispositive of this case, we REVERSE and DISMISS on the ground that the trial court lacked jurisdiction.