**In re APACHE CORPORATION, Relator.**

**No. 07–00–0503–CV.**

Court of Appeals of Texas, Amarillo.

Feb. 1, 2001.

Rehearing Overruled March 16, 2001.

Wm. B. Wagner, Marc B. Collier, Fulbright & Jaworski, L.L.P., Austin, for relator.

James B. Boldrick, James W., Essman, Boldrick, Clifton, Holland & Essman, Midland, for real party in interest.

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

QUINN, Justice.

Apache Corporation (Apache) petitions us for a writ of mandamus against the Honorable Kelly G. Moore, Judge of the 121st Judicial District Court. It requests that we order Judge Moore to abate cause number 7629, styled *Ray Marion v. Apache Corporation*, pending disposition of an administrative proceeding before the Texas Railroad Commission (TRC). Judge Moore refused to abate the suit. For the reasons which follow, we deny the petition for mandamus.

### *Background*

The dispute involves the secretion of water from oil and gas wells operated by Apache onto realty purportedly owned by Ray Marion (Marion). According to the latter, the water contaminated two aquifers underlying his property and resulted in the destruction of crops. Thereafter, Marion sued Apache asserting causes of action sounding in negligence, negligence *per se*, trespass, infliction of emotional distress, nuisance, and strict liability. So too did he seek, among other things, monies from Apache equaling 1) the cost of abating the supposed contamination and 2) the damage permanently inflicted upon the land.

Yet, before initiating suit, Marion complained to the TRC which, due to the complaint, began proceedings to amelio-

rate the alleged pollution. Because the TRC has yet to conclude those proceedings, Apache moved the trial court to stay the lawsuit. It did so since the agency allegedly had either exclusive or primary jurisdiction over the issue of abating the contamination. The trial court disagreed and denied the motion. From that order, Apache seeks mandamus.

### Argument

Apache argues that the trial court clearly abused its discretion in denying the motion to abate. That is, the doctrines of exclusive and primary jurisdiction allegedly compelled the relief which the trial court refused to grant. We disagree.

*Exclusive Jurisdiction*

■■■■ As to exclusive jurisdiction, the theory applies if a statute evinces legislative intent to vest the TRC and no other body (judicial or administrative) with authority over the matters in question. In reviewing statutes potentially applicable to the situation at bar, we note that the Texas Natural Resources Code does grant authority to the TRC to "adopt and enforce rules and orders" to prevent the pollution of surface and subsurface water. TEX. NAT. RES.CODE ANN. § 91.101 (Vernon 1993). Similarly, through the Texas Water Code, the legislature stated that the TRC "is *solely responsible* for the control and disposition of waste and the *abatement* and prevention of pollution of surface and subsurface water resulting from ... activities associated with the drilling, development, and production of oil or gas...." TEX. WATER CODE ANN. § 26.131(a) (Vernon 2000) (emphasis supplied). Upon combining these provisos, one could no doubt conclude that the TRC has the power to act *viz* some of the issues involved in the Marion suit, *e.g.,* abatement of the supposed contamination. Yet, whether that

power is exclusive to the TRC is not as clear.

Admittedly, the legislature utilized the phrase "solely responsible" in referring to the Commission's authority to abate and prevent pollution of surface and subsurface water. Moreover, the plain meaning of "solely responsible" could certainly encompass the exclusive power to act in the area. Yet, more exists to the Water Code and Natural Resources Code than § 26.131 and § 91.101, respectively. And, the remainder of each must be considered when uncovering the meaning of and intent behind 26.131 and 91.101. *Dallas Cent. Appraisal Dist. v. Tech Data Corp.,* 930 S.W.2d 119, 122 (Tex.App.—Dallas 1996, writ denied) (holding that courts must look to the statute as a whole and not to its isolated provisions when determining legislative intent); TEX. GOV.CODE ANN. § 311.021(2) (Vernon 1998) (stating that the entire statute is intended to be effective).

Next, in perusing the Water Code, we discover that § 26.131 is located within a part of the code that specifies the respective authority of various state agencies over issues of water pollution. For instance, through § 26.127, the legislature mandated that the Texas Natural Resource Conservation Commission had "principal authority ... on matters relating to the quality of the water in the state." TEX. WATER CODE ANN. § 26.127(a). Via § 26.129, we are told that the Parks and Wildlife Department has the duty to enforce various provisions of the Water Code "to the extent that any violation affects aquatic life and wildlife...." *Id.* at § 26.129. Furthermore, the authority of the Texas Department of Health to abate nuisances "resulting from pollution" and that of the State Soil and Water Conservation Board to abate and prevent "pollution resulting from agricultural and silvicultural nonpoint source pollution" is bestowed

via § 26.130 and § 26.1311, respectively. This layout or scheme suggests that· the legislature, by enacting 26.126, 26.129, 26.130, 26.131, and 26.1311, was concerned more with avoiding jurisdictional disputes among agencies than with declaring some grand jurisdictional plan encompassing agencies and this state's court system. Indeed, at least one court has so viewed the purpose of § 26.131. *Jackson County Vacuum Truck, Inc. v. Lavada–Navidad River Authority,* 701 S.W.2d 12, 14 (Tex. App.—Corpus Christi 1985, no writ) (stating that the legislative intent behind § 26.131 was to resolve jurisdictional disputes between the Railroad Commission and the Department of Water Resources). And, that purpose cannot be ignored. *See* Tex. Gov.Code Ann. § 311.023(1) (stating that the object sought to be attained must be considered when construing a statute).

To the foregoing analysis, we add the effect of several more statutes. The first states that one

> who owns an interest in property ... that may be damaged by another violating ... another law of this state prohibiting waste or a valid *rule or order* of the [TRC] may sue for and recover damages and have *any other relief to which he may be entitled* at law or in equity."

Tex. Nat. Res.Code Ann. § 85.321 (emphasis supplied). The second states that

> [n]one of the provisions of ... chapter [8] ..., no suit by or against the [TRC], and no penalties imposed on or claimed against any party violating a law, rule, or order of the [TRC] shall *impair or abridge or delay a cause of action for damages or other relief* that an owner of

land ... may have or assert against any party violating any rule or order of the [TRC] or any judgment under this chapter.

*Id.* at § 85.322 (emphasis supplied). And, the last declares that

> the [TRC] may enforce this chapter [chapter 91 of the Natural Resources Code] or any rule, order, or permit ... in the manner and *subject to* the conditions provided in Chapters 81 and 85 of this code, including the authority to seek and obtain civil penalties and injunctive relief as provided by those chapters.

*Id.* at § 91.003(a) (Vernon's Supp.2001) (emphasis supplied). Through § 85.321, the legislature unmistakably declared its intent to allow those owning an interest in realty who have suffered injury due to a violation of some rule or order of the TRC to sue for and recover damages and other relief. Through the second proviso, the same body evinced its intent to permit such a suit to proceed without delay.[1] And, lastly, through § 91.003(a), we are told that any authority of the TRC to regulate, prevent, and abate pollution via § 91.131 of the Natural Resources Code or § 26.131 of the Water Code is expressly subject to the conditions in chapter 85, which conditions include those in § 85.321 and § 85.322.

In other words, we have three statutes that, when read together, permit one to immediately file and prosecute damage suits founded upon the violation of TRC rules and orders irrespective of the TRC's ability to regulate the oil and gas indus-

---

1. Apache correctly notes that section 85.322 alludes to suits by or against the TRC or penalties imposed upon entities and that no such suit or penalty has apparently been initiated or imposed at bar. Nevertheless, the provision speaks of impeding lawsuits and

denotes an intent to forego any such impediment. In other words, while certain of its conditions may not be present at bar, the intent implicit in the edict is nonetheless quite relevant to the issue before us.

try.[2] More importantly, when the effect and intent of these three statutes are juxtaposed against the wording and purpose of § 26.131 of the Water Code and § 91.101 of the Natural Resources Code, it is quite difficult to conclude that the latter two provisions somehow grant exclusive jurisdiction to the TRC to regulate, prevent, and abate contamination caused by oil and gas production. Simply put, the legislature's decision 1) to allow those aggrieved to immediately pursue damages through suit and 2) to condition the enforcement by the TRC of its rules and orders on provisos permitting such suits is hardly indicative of an intent to pretermit the judiciary from acting. Consequently, we must hold that the legislature has yet to grant exclusive jurisdiction to the TRC over disputes concerning the abatement of water contamination caused by oil and gas production.

*Primary Jurisdiction*

■ As for the theory of primary jurisdiction, it embodies the concept that government agencies should not be bypassed on matters especially committed to them. *Foree v. Crown Central Petroleum Corp.*, 431 S.W.2d 312, 316 (Tex.1968) (*quoting* Davis, Administrative Law Text, § 19.07 (Hornbook Series 1950)). Yet, it, like most rules, has its exceptions. At least three have been recognized. *American Pawn & Jewelry, Inc. v. Kayal*, 923 S.W.2d 670, 674 (Tex.App.—Corpus Christi 1996, writ denied) (discussing three exceptions). Furthermore, only one need be considered at bar. It pertains to actions or disputes which are inherently judicial in nature and over which the legislature has not vested exclusive jurisdiction in some administrative body. *Amarillo Oil Co. v. Energy-*

*Agri Prod., Inc.*, 794 S.W.2d 20, 26 (Tex. 1990); *Foree v. Crown Central Petroleum Corp.*, 431 S.W.2d at 316; *American Pawn & Jewelry, Inc. v. Kayal*, 923 S.W.2d at 674. That is, if a dispute is inherently judicial in nature and the legislature has yet to grant some agency exclusive authority over it, then the doctrine of primary jurisdiction is inapplicable. *Id.* And, this is true even though a particular agency has extensive general regulatory authority in the area. *Foree v. Crown Central Petroleum Corp., supra.*

■ Next, in what could be called a verbose "shotgun pleading," Marion averred multiple causes of action.[3] They included trespass, negligence, negligence *per se*, nuisance, negligent and intentional infliction of emotional distress, and strict liability. It is beyond dispute that the claim sounding in trespass is inherently judicial in nature; indeed, our Supreme Court has so held. *Gregg v. Delhi–Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411, 415 (1961). The same conclusion can be reached regarding one or more of the remaining claims. Whether Apache acted negligently, whether it intentionally inflicted emotional distress upon Marion, or whether it created a nuisance also implicates common law causes of action. That is, the dispute involves causes of action not only created but also historically resolved by the judiciary. That they are inherently judicial in nature, therefore, is beyond doubt.

Additionally, and as concluded above, matters regarding the abatement of or recompense for contamination caused by oil and gas production have not been placed within the exclusive jurisdiction of the TRC. Nor do we find any statute that

---

2. Marion does allege in his live pleading that Apache violated one or more rules of the TRC.

3. Through "shotgun pleading," the litigant offers numerous contentions hoping that at least one will find its target. Though of long existence, the practice is not favored.

expressly vests the TRC with exclusive authority to address common law causes of action through the assertion of which one seeks to abate or remedy contamination. Given this, the circumstances before us come within an exception to the doctrine of primary jurisdiction. Therefore, the doctrine does not apply here.

In sum, we find no abuse of discretion on the part of the trial court. Thus, Apache's request for mandamus is denied.