NO. 12-03-00249-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
BCY WATER SUPPLY CORPORATION,       §                 APPEAL FROM THE 369TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

RESIDENTIAL INVESTMENTS, INC.,
APPELLEE                                                        §                 ANDERSON COUNTY, TEXAS
                                                                                                                                                            
OPINION
            BCY Water Supply Corporation appeals the trial court’s judgment entered against it in favor
of Residential Investments, Inc. BCY raises four issues on appeal. We reverse and render.
 
Background
            BCY is a nonprofit corporation that provides water service to certain parts of Anderson
County, Texas. Residential Investments was considering purchasing an 8.02-acre tract of land in
Anderson County, which it intended to subdivide into four parcels and improve with frame houses. 
The subject property was located in BCY’s water supply coverage area. John Brown, on behalf of
Residential Investments, went to BCY’s office to inquire about water service for the subject
property. When Brown arrived, only two persons were present at BCY’s office—Barry Thornton,
who performed maintenance work for BCY,


 and Lana Hart, BCY’s office secretary and bookkeeper. 
Brown inquired of Thornton concerning whether it would be possible to get water service at the
subject property. According to Brown, Thornton responded that there would be no problem getting
water service for the property.


 Brown testified that, based on Thornton’s statement, Residential
Investments purchased the subject property and began making improvements thereto. Subsequently,
a BCY board member notified Brown that he could not get water service until he upgraded to a four-inch water line at his own expense. Residential Investments ultimately sold the subject property.
            Residential Investments filed the instant suit in April 2000 alleging that BCY improperly
refused to provide water services to it.


 Subsequently, Residential Investments amended its
pleadings, deleting its denial of service allegations and adding common law claims of negligent
misrepresentation and promissory estoppel. The matter proceeded to trial. A jury found BCY liable
for negligent misrepresentation, awarding Residential Investments compensatory damages in the
amount of $18,000.00 and exemplary damages in the amount of $1.00. This appeal followed.
 
Jurisdiction
            In its first issue, BCY argues that the trial court lacked subject matter jurisdiction to consider
the lawsuit filed by Residential Investments because the suit arose from BCY’s denial of water
service. Our trial courts are courts of general jurisdiction. Subaru of America, Inc. v. David
McDavid Nissan, Inc., 84 S.W.3d 212, 220 (Tex. 2002); Dubai Petroleum Co. v. Kazi, 12 S.W.3d
71, 75 (Tex. 2000). The Texas Constitution provides that a trial court’s jurisdiction consists of
exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in
cases where exclusive, appellate, or original jurisdiction may be conferred by the Texas Constitution
or other law on some other court, tribunal, or administrative body. See Tex. Const. art. V, § 8;
Subaru, 84 S.W.3d at 220. By statute, trial courts have the jurisdiction provided by Article V,
Section 8 of the Texas Constitution, may hear and determine any cause that is cognizable by courts
of law or equity, and may grant any relief that could be granted by either courts of law or equity. See
Tex. Gov’t Code Ann. §§ 24.007–.008 (Vernon 2004). Courts of general jurisdiction presumably
have subject matter jurisdiction unless a contrary showing is made. Subaru, 84 S.W.3d at 220.
            On the other hand, there is no presumption that administrative agencies are authorized to
resolve disputes. Id. Rather, an agency may exercise only those powers the law, in clear and express
statutory language, confers upon it. Id. (citing Key W. Life Ins. Co. v. State Bd. of Ins., 350 S.W.2d
839, 848 (1961)). Courts will not divine by implication additional authority to agencies, nor may
agencies create for themselves any excess powers. See id.
            Under the exclusive jurisdiction doctrine, the legislature grants an administrative agency the
sole authority to make an initial determination in a dispute. See Cash Am. Int’l, Inc. v. Bennett, 35
S.W.3d 12, 15 (Tex. 2000). An agency has exclusive jurisdiction when a pervasive regulatory
scheme indicates that the legislature intended for the regulatory process to be the exclusive means
of remedying the problem to which the regulation is addressed. See Subaru, 84 S.W.3d at 221. 
Whether an agency has exclusive jurisdiction depends on statutory interpretation. Id. Typically, if
an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking
judicial review of the agency’s action. See Bennett, 35 S.W.3d at 15. Until then, the trial court lacks
subject matter jurisdiction and must dismiss without prejudice the claims within the agency’s
exclusive jurisdiction. Subaru, 84 S.W.3d at 221.
            Under the Texas Government Code, the Texas Commission on Environmental Quality (the
“TCEQ”) “shall have exclusive original jurisdiction over water and sewer utility rates, operations
and services not within the incorporated limits of a municipality exercising exclusive original
jurisdiction over those rates, operations, and services . . . .” Tex. Water Code Ann. § 13.042(e)
(Vernon 2000). Thus, based on the express language of Section 14.042(e), the TCEQ’s jurisdiction
under certain circumstances is exclusive. Id. The question before us in the case at hand is whether
such circumstances that would give rise to the TCEQ’s exclusive jurisdiction are present.
            Determining if an agency has exclusive jurisdiction requires statutory construction and raises
jurisdictional issues. Subaru, 84 S.W.3d at 222. Thus, whether an agency has exclusive jurisdiction
is a question of law we review de novo. Id.; see El Paso Nat’l Gas Co. v. Minco Oil & Gas, Inc.,
8 S.W.3d 309, 312 (Tex. 1999). Our objective when construing a statute is to determine and give
effect to the legislature's intent. See Phillips v. Beaber, 995 S.W.2d 655, 658 (Tex. 1999). To
ascertain that intent, we look first to the statute's plain language and give words their ordinary
meaning. Id. We must view the statute's terms in context and give them full effect. Id. Further,
we presume that the legislature acted with knowledge of the common law and court decisions. Id.
            BCY acknowledges that Residential Investments’s amended pleadings seek redress based on
common law causes of action. It argues, however, that since such claims arise from its allegations
that it was improperly denied water service by BCY, the suit falls under the TCEQ’s exclusive
jurisdiction pursuant to Section 14.042(e). In support of its argument, BCY relies heavily on Jordan
v. Staff Water Supply Corp., 919 S.W.2d 833 (Tex. App.–Eastland 1996, no writ). In Jordan, the
court held that the trial court correctly determined that the commission had jurisdiction over Jordan’s
claim regarding failure to provide water service. However, the court further held that the trial court
properly had jurisdiction over claims related to misconduct by the directors of Staff Water Supply
Corporation.


 Id at 835–36. In Lake Country Estates, Inc. v. Toman, 624 S.W.2d 677 (Tex.
App.–Fort Worth 1981, writ ref’d n.r.e.), which BCY also cites in its brief, the court reached a
similar conclusion. Id. at 682 (holding that despite regulatory agency’s jurisdiction over matters
relating directly to directors’ responsibilities to make decisions regarding the expansion of the water
district’s utility system, the plaintiff’s common law causes of action for slander and tortious
interference with contract were within the trial court’s jurisdiction). 
            We iterate that there is no presumption that administrative agencies are authorized to resolve
disputes and that such agencies may exercise only those powers the law, in clear and express
statutory language, confers upon them. Subaru, 84 S.W.3d at 220. BCY’s interpretation of Section
13.042(e) to include matters arising from water and sewer utility rates, operations, and services is
neither supported by the express language of the statute nor the case law upon which BCY relies. 
The words “arising from” do not appear in Section 13.042(e), and we may not include them by
implication. Subaru, 84 S.W.3d at 220. Rather, we must presume that, because the legislature
chose not to include the words “arising from” in Section 13.042(e), it intended to limit the TCEQ’s
jurisdiction specifically to matters directly related to water and sewer utility rates, operations, and
services, such as was initially pleaded by Residential Investments in the instant case, but later
abandoned. See Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981) (every word
excluded from a statute must be presumed to have been excluded for a purpose).
              A plaintiff’s petition defines the issues in the lawsuit. See Murray v. O&A Express, Inc.,
630 S.W.2d 633, 636 (Tex. 1982). An amended document causes the instrument for which it is
substituted to no longer be regarded as a part of the pleading in the record. See Tex. R. Civ. P. 65. 
Here, the second amended petition filed by Residential Investments raises common law claims for
negligent misrepresentation and promissory estoppel. By omitting it from its second amended
petition, Residential Investments abandoned its denial of service cause of action. Considering the
express language of the statute, we conclude that such common law causes of action do not fall
within the TCEQ’s exclusive jurisdiction. Therefore, we hold that the trial court did not err in
declining to dismiss the action. BCY’s first issue is overruled. 
 
Evidentiary Sufficiency
            In its second issue, BCY argues that the evidence is both legally and factually insufficient
to support the jury’s finding as to negligent misrepresentation. In reviewing a legal insufficiency or
no evidence issue, we must consider only the evidence and inferences that tend to support the jury’s
verdict, disregarding all contrary evidence and inferences. See Wal-Mart Stores, Inc. v. Gonzalez,
968 S.W.2d 934, 936 (Tex. 1998). We may only sustain a legal insufficiency issue when the record
discloses one of the following: (1) there is a complete absence of evidence of a vital fact, (2) the
court is barred by rules of law or evidence from giving weight to the only evidence offered to prove
a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence,
or (4) the evidence establishes conclusively the opposite of a vital fact. See Merrell Dow Pharm.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). It is not within our power to second guess the
factfinder unless only one inference can be drawn from the evidence. See Havner v. E-Z Mart
Stores, Inc., 825 S.W.2d 456, 461 (Tex. 1992). If there is more than a scintilla of evidence to
support the finding, the evidence is legally sufficient. See Browning-Ferris, Inc. v. Reyna, 865
S.W.2d 925, 928 (Tex. 1993). 
            To support a finding of negligent misrepresentation, the record must contain evidence
supporting that (1) the defendant, in the course of his business, profession, or employment, or in
another transaction in which he had a pecuniary interest, supplied to the plaintiff false information
for guidance in a business transaction, (2) the defendant failed to exercise reasonable care or
competence in obtaining or communicating the information, (3) the plaintiff justifiably relied on the
information, and (4) the defendant’s negligent misrepresentation proximately caused the plaintiff to
suffer pecuniary loss. See McCamish, Martin, Brown, and Loeffler v. F.E. Appling Interests, 991
S.W.2d 787, 791 (Tex.1999); see also Restatement (2d) of Torts § 552 (1977). 
            In the case at hand, the record contains various witnesses’ recollections of the conversation
that occurred between Brown and Thornton. According to Brown’s testimony, he told Thornton that
he was buying an eight-acre tract of land near his house and wanted to determine if he could get
water service before he bought the property because he wanted to subdivide it and would require
between one and four water meters. Brown testified that Thornton said there would not be a problem
getting a meter because BCY had just upgraded the lines running along Highway 645. Brown further
stated that Thornton, after checking with Hart, represented that the water line had been upgraded as
far as in front of County Road 2809.


 Moreover, Brown testified that Thornton stated Brown should
simply call him when he was ready and Thornton would install the meter at a cost of one thousand
eighty-five dollars. Brown further stated that in reliance on Thornton’s statement, he purchased the
subject property.
            To the contrary, Thornton testified that Brown merely asked if he could get a single meter
installed at the subject property. According to Thornton’s testimony, he responded that he could
not foresee there being a problem installing a meter on the property although BCY was operating
near full capacity, but that, ultimately, Brown would have to get approval from the board of directors
before he could get a meter installed. Thornton further testified that Brown never told him that he
intended to subdivide the property. Moreover, Thornton stated that he never guaranteed to Brown
that he could have the meter installed. Thornton denied quoting Brown a cost for the installation of
a meter.
            Hart testified that she was present during the conversation at issue between Brown and
Thornton. Hart stated that Brown asked Thornton about having a water meter installed on his
property and that Thornton told Brown that the line was at capacity at that time. She stated that
Thornton also told Brown that he would need to go to the board of directors to determine what he
would need to do to upgrade the water line so that he could get his meter. Hart further testified that
Brown did not say anything about his intent to subdivide the subject property.
            BCY cites Airborne Freight Corp., Inc. v. C.R. Lee Enterprises, 847 S.W.2d 289 (Tex.
App.–El Paso 1992, writ denied) and argues that there was no evidence that Thornton made a
negligent misrepresentation regarding a fact that existed at the time of the alleged statement, but
rather, that Thornton’s statement concerned future performance. Residential Investments contends
that BCY’s reliance on Airborne Freight is misplaced because the court’s analysis concerning
existing facts dealt with actual fraud, which requires a showing of intent, not negligent
misrepresentation, which merely involves careless actions.
            In a cause of action for negligent misrepresentation, the misrepresentation at issue must be
one of existing fact. See Allied Vista, Inc. v. Hold, 987 S.W.2d 138, 141 (Tex. App.–Houston [14th
Dist.] 1999, pet. denied). A promise to do or refrain from doing an act in the future is not actionable
because it does not concern an existing fact. See Miksch v. Exxon Corp., 979 S.W.2d 700, 706
(Tex. App.–Houston [14th Dist.] 1998, pet. denied). In Airborne Freight, the plaintiff alleged
causes of action for breach of contract, fraud, and negligent misrepresentation. Id. at 291. The
plaintiff’s claims of fraud and negligent misrepresentation were both submitted to the jury. Id. at
293. There, the court specifically stated, “the sort of ‘false information’ contemplated in a negligent
misrepresentation case is a misstatement of existing fact.” Id. at 294. The court ultimately
concluded with regard to the plaintiff’s negligent misrepresentation theory that the plaintiff’s
statement could not be characterized as a misrepresentation of existing fact and that it was, if
anything, a conditional promise. Id. at 298. Thus, contrary to Residential Investments’s contention,
the court’s discussion in Airborne Freight was not limited to a claim of fraud. Furthermore, whether
the misrepresenting party did so intentionally or negligently has no bearing on the issue of what was
misrepresented.
            In the instant case, Thornton’s statement, even when considered in a light that tends to
support the jury’s verdict, is not one of existing fact. It is undisputed that Residential Investments
had not purchased the subject property at the time Thornton made the statement to Brown. Indeed,
the record reflects that BCY could not get water service for property that it did not own. Thus, if
anything, Thornton’s statement amounted to no more than a conditional promise of future
performance contingent on BCY’s ownership of the property.


 See, e.g., Airborne Freight, 847
S.W.2d at 298; see also Manon v. Solis, 142 S.W.3d 380, 388 (Tex. App.–Houston [14th Dist.]
2004, pet. denied) (“the sort of false information contemplated in a negligent misrepresentation case
is a misstatement of existing fact, not a promise of future conduct.”). We conclude that there was
no evidence supporting that the false information allegedly represented by BCY to Residential
Investments comprised facts then in existence. Id. Therefore, we hold that the evidence was legally
insufficient to support the jury’s verdict. BCY’s second issue is sustained. 
 
Disposition
            Having sustained BCY’s second issue, we reverse the trial court’s judgment and render
judgment that Residential Investments take nothing on its claims against BCY.
 
 
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
 
Opinion delivered February 10, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.




(PUBLISH)